IN THE MATTER OF: J.W.S., A MINOR CHILD

No. COA08-576

(Filed 16 December 2008)

**Child Support, Custody, and Visitation— motion to set aside adjudication—UCCJEA—lack of subject matter jurisdiction—home state—convenient forum—temporary nonsecure custody orders—trial court required to make contact with foreign court**

The trial court abused its discretion by denying respondent father's motion to set aside the 2 April 2007 adjudication order that found a juvenile to be neglected and dependent because the trial court lacked subject matter jurisdiction under the UCCJEA when: (1) a custody order regarding the juvenile was entered on

4 January 2000 by a New York court, and thus the North Carolina trial court did not have jurisdiction under N.C.G.S. § 50A-201 regarding initial child custody determinations; (2) even though North Carolina qualified as the home state of the child, N.C.G.S. § 50A-203 provides that a party seeking to modify a custody determination must obtain an order from the original decree state stating that it no longer has jurisdiction, and there was no order from the New York court stating that New York no longer had jurisdiction; (3) there was no determination by the New York court that North Carolina would be a more convenient forum under N.C.G.S. § 50A-207; (4) N.C.G.S. § 50A-203(2) was not satisfied even though respondent and the juvenile left New York and moved to North Carolina since the juvenile's mother continued to live in New York; (5) although the trial court had authority under N.C.G.S. § 50A-204(a) to enter temporary nonsecure custody orders since the juvenile was present in North Carolina when the nonsecure custody orders were entered and such orders were based on evidence gathered by DSS that the juvenile was abused, neglected, and dependent, there was no record evidence that the trial court ever communicated with the New York court as mandated by N.C.G.S. §§ 50A-204(d) and 50A-110 or as ordered by the trial court on 9 February 2007 to determine if the New York court opted not to exercise jurisdiction; and (6) the fact that DSS made efforts to contact the New York court did not meet the requirement of N.C.G.S. § 50A-204(d), and the trial court must make the contact with the New York court.

Appeal by Respondent from order entered 7 February 2008 by Judge Jerry Waddell in Carteret County District Court. Heard in the Court of Appeals 15 September 2008.

*Debra Gilmore for Petitioner-Appellee Carteret County Department of Social Services.*

*The Diener Law Office, P.A., by Marc K. Haggard, for Respondent-Appellant.*

*Pamela Newell Williams for Respondent-Appellee Guardian ad Litem.*

STEPHENS, Judge.

Respondent, the biological father of J.W.S. ("the juvenile"), appeals from order entered 7 February 2008 denying his motion to

IN RE J.W.S.

[194 N.C. App. 439 (2008)]

set aside a juvenile adjudication order entered 2 April 2007 wherein the trial court adjudicated the juvenile neglected and dependent. The overriding issue on appeal is whether the Carteret County District Court ("trial court") had subject matter jurisdiction to enter the adjudication order. For the reasons stated herein, we conclude the trial court lacked subject matter jurisdiction to enter the adjudication order. Accordingly, we reverse the order of the trial court denying Respondent's motion to set aside the 2 April 2007 adjudication order.

## I. Facts

On 4 January 2000, the Family Court of Allegany County, New York ("New York court") entered an order granting the juvenile's biological mother temporary custody of the juvenile "pending the criminal court action" whereupon "either party [could then] petition for custody." Sometime during 2001 or 2002, Respondent moved with the juvenile to North Carolina and lived in Onslow County, North Carolina, until at least mid-December 2005.

On 19 January 2006, Respondent filed a complaint in Onslow County District Court for divorce from the juvenile's mother and for custody of the juvenile. The district court granted the divorce but "reserved for later determination" the issue of custody.

On 10 April 2006, Respondent signed a one-year lease for an apartment in Emerald Isle, North Carolina. During April of 2006, Respondent lived in this apartment with Wayne and Tracey Eggers. On 20 April 2006, the Eggers went to the Emerald Isle police station and reported to Lieutenant James Reese that Respondent had assaulted the juvenile. Lieutenant Reese contacted the Carteret County Department of Social Services ("DSS" or "Petitioner") and relayed the information concerning the possible assault on the juvenile. That evening, Lieutenant Reese responded to a call from the Eggers who alleged that Respondent was threatening them. Lieutenant Reese went to the apartment and subsequently arrested Respondent for communicating threats. A DSS social worker also went to the apartment that night and, after interviewing the Eggers, believed the juvenile to be abused, neglected, and dependent.

The trial court, via an after-hours magistrate, authorized Petitioner to take nonsecure custody of the juvenile on 20 April 2006 based on allegations of abuse, neglect, and dependency contained in

a juvenile petition filed by DSS on 21 April 2006.[1] Nonsecure custody was maintained with Petitioner by order entered 24 April 2006. Petitioner filed a second juvenile petition on 25 April 2006. Subsequent nonsecure custody orders maintaining the juvenile in Petitioner's custody were entered 28 April and 19 May 2006. While in the custody of Petitioner over the course of these proceedings, the juvenile has been placed in a series of treatment facilities including the John Umstead Hospital in Butner, North Carolina, the Yahweh Center in Wilmington, North Carolina, Holly Hill Hospital in Raleigh, North Carolina, the Pines Residential Treatment Center in Norfolk, Virginia, and therapeutic foster homes in North Carolina.

On 24 May 2006, Respondent filed a *pro se* motion in the United States District Court for the Eastern District of North Carolina, seeking to remove the proceeding to federal court and claiming to be a permanent resident of Texas. The trial court stayed the proceeding pending the outcome of the federal action. On 26 May 2006, the United States District Court entered an order wherein the court determined that it did not have original jurisdiction over the matter and remanded the case to the District Court of Carteret County. By order entered 26 May 2006, the trial court continued nonsecure custody of the juvenile with Petitioner.

On 15 August 2006, Respondent filed an answer and moved to dismiss the petitions for failure to state a claim, lack of personal jurisdiction, and lack of subject matter jurisdiction. Respondent's motion to dismiss these two petitions was heard on 22 September 2006, and the trial court denied the motion by order entered 16 November 2006.

Petitioner filed a third juvenile petition on 16 August 2006. On 23 October 2006, Respondent filed three responses and motions to dismiss the petition for failure to state a claim, lack of personal jurisdiction, and lack of subject matter jurisdiction wherein Respondent claimed that he and the juvenile had been residents of Texas since February 2006. On 31 October 2006, Petitioner filed a response opposing Respondent's motions to dismiss, contending the trial court had temporary emergency jurisdiction pursuant to N.C. Gen. Stat. § 50A-204(a) to make the initial decision as to nonsecure custody. Petitioner's response included a copy of the 4 January 2000

---

1. The nonsecure custody order was signed by Jerry Guthrie, Judge's designee, by telephonic approval at 11:25 p.m. on 20 April 2006. The juvenile petition alleging the juvenile to be abused, neglected, and dependent was filed with the court the following morning after the court opened for business.

order from the New York court granting the juvenile's mother temporary custody over the juvenile.

After a hearing on 8 December 2006, the trial court suspended Respondent's visitation with the juvenile. On 22 January 2007, Judge Andy Morales of the District Court of Bexar County, Texas, issued an *ex parte* temporary restraining order to keep the juvenile's mother from removing the juvenile from Respondent or any other location. The Texas court further ordered a law enforcement officer to remove the juvenile from the Pines Treatment Center in Virginia and to deliver him to Respondent.

Upon receiving notice of the Texas order, the trial court issued an order to show cause as to why Respondent should not be held in contempt of court for attempting to thwart the trial court's custody order. The trial court drafted a letter to Judge Morales and sent the letter, along with a copy of the show cause order, to the Texas court requesting to discuss the issue of jurisdiction between the two courts. Judge Morales never responded to this request.

Following a hearing on 17 November 2006, the trial court entered an order on 9 February 2007 denying Respondent's 23 October 2006 motions to dismiss. The trial court concluded that it had temporary, emergency jurisdiction over the matter pursuant to N.C. Gen. Stat. § 50A-204(a) in that the juvenile

> was present in North Carolina at the time of initiation of these proceedings and that [DSS] properly filed abuse/neglect/dependency petitions and requested nonsecure custody to protect [the juvenile] from alleged mistreatment and abuse.

The trial court then concluded that "New York made an initial child-custody determination in January 2000, and the child's mother . . . continues to reside in New York" so, pursuant to N.C. Gen. Stat. § 50A-204(d), the trial court would

> immediately communicate with the court in Allegany County, New York to resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of this Court's orders.

On 16 February 2007, the Texas court, Judge John D. Gabriel, Jr., presiding, entered a temporary order declaring that it had jurisdiction over the case. It further stated that the juvenile had been illegally restrained in Virginia and ordered the Pines Treatment Center to "immediately surrender" the juvenile to Respondent.

Respondent filed a petition in the Circuit Court of the City of Norfolk, Virginia, seeking enforcement of the Texas court's orders. However, after consultation with the trial court, the Virginia court issued a final order on 23 February 2007 refusing to enforce the Texas orders.

In March 2007, the trial court spoke with Judge Gabriel of the Texas court. Upon receiving information regarding the background and history of the case in North Carolina, Judge Gabriel agreed that North Carolina rather than Texas was the appropriate jurisdiction and informed the trial court that he would issue an order dismissing the Texas action at the next scheduled Texas court hearing. The context of this communication was shared at the scheduled court hearing on 9 March 2007 but there is no evidence that such order was ever entered.

On 28 March 2007, Judge Janet Littlejohn of the Texas court issued an Order and Writ of Attachment expressly holding that Texas had jurisdiction over the juvenile's custody and ordering the child to be returned to the custody of Respondent.

On 2 April 2007, the trial court entered an order adjudicating the juvenile neglected and dependent. The trial court found that the North Carolina court had properly exercised emergency jurisdiction pursuant to N.C. Gen. Stat. § 50A-204 and that "[s]ince the issuance of the [trial court's] decision denying the motions to dismiss, the State of New York has not opted to exercise jurisdiction[.]" The court concluded:

Whereas the State of New York has opted to not exercise jurisdiction, whereas the subject juvenile is in the legal custody of [DSS] and has been for approximately eleven (11) months, and whereas this Court has now communicated with multiple States on the issue of jurisdiction and the States have reached the mutual conclusion that it is in [the juvenile's] best interests for North Carolina to continue to exercise jurisdiction, with this Court being the most appropriate forum, this Court shall continue to exercise jurisdiction over this matter.

On 2 May 2007, Judge Littlejohn entered a Final Order in the District Court of Bexar County, Texas. Even though the juvenile had been in DSS custody since 20 April 2006, Judge Littlejohn found that "Texas is currently the 'Home State' of [the juvenile] and has so been since February 1, 2006[,]" and that Texas had jurisdiction over the

custody of the juvenile. The order appointed Respondent to be the Sole Managing Conservator of the juvenile.

On 4 May 2007, the trial court held a combined dispositional and permanency planning hearing and entered an order wherein reunification with Respondent with a concurrent plan of adoption was ordered as the primary permanent plan for the juvenile. After a hearing on 13 July 2007, the trial court entered a permanency planning and review order on 24 July 2007 changing the juvenile's permanent plan to adoption and ordering Petitioner to move for· termination of parental rights within sixty days.

On 21 August 2007, Petitioner filed a motion to terminate the parental rights of both Respondent and the juvenile's mother based on the grounds set forth in N.C. Gen. Stat. §§ 7B-1111(a)(1),(2),(6) and (7) (2007). Respondent filed a response to the motion on 16 November 2007, denying that a basis to terminate his parental rights to the juvenile existed and further arguing, *inter alia,* that the trial court lacked subject matter jurisdiction over the proceedings under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA").

On 28 December 2007, Respondent filed a motion to set aside the 2 April 2007 adjudication order pursuant to North Carolina Rules of Civil Procedure 60(b)(4) and (6), again arguing that the trial court lacked subject matter jurisdiction over the adjudication proceedings under the UCCJEA. By order entered 7 February 2008, the trial court denied Respondent's motion. On·10 March 2008, Respondent filed notice of appeal from the order denying his motion to set aside.

II. Discussion

Pursuant to N.C. Gen. Stat. § 1A-1, Rule 60(b), "[o]n motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding [if] . . . [t]he judgment is void [or for] . . . [a]ny other reason justifying relief from the operation of the judgment." N.C. Gen. Stat. § 1A-1, Rules 60(b)(4) and (6) (2007). Appellate review of a trial court's denial of a Rule 60(b) motion is for abuse of discretion. *State ex rel. Davis v. Adams*, 153 N.C. App. 512, 571 S.E.2d 238 (2002). "A judge is subject to reversal for abuse of discretion only·upon a showing by a litigant that the challenged actions are manifestly unsupported by reason." *Id.* at 515, 571 S.E.2d at 240 (quotation marks and citations omitted).

Subject matter jurisdiction is the threshold requirement for a court to hear and adjudicate a controversy brought before it. *In re McKinney*, 158 N.C. App. 441, 581 S.E.2d 793 (2003). Although the North Carolina Juvenile Code grants the district courts of North Carolina "exclusive, original jurisdiction over any case involving a juvenile who is alleged to be abused, neglected, or dependent[,]" N.C. Gen. Stat. § 7B-200(a) (2007), the jurisdictional requirements of the UCCJEA and the Parental Kidnapping Prevention Act ("PKPA") must also be satisfied for a court to have authority to adjudicate petitions filed pursuant to our juvenile code.[2] *In re Brode*, 151 N.C. App.. 690, 566 S.E.2d 858 (2002). The UCCJEA, codified at Chapter 50A of the North Carolina General Statutes, is designed to "provide[] a uniform set of jurisdictional rules and guidelines for the national enforcement of child custody orders[.]" *In re Q.V.*, 164 N.C. App. 737, 739, 596 S.E.2d 867, 869, *cert. denied*, 358 N.C. 732, 601 S.E.2d 859 (2004).

The first provision of the UCCJEA, N.C. Gen. Stat. § 50A-201 (2007), addresses the jurisdictional requirements for initial child-custody determinations. An "initial determination" is defined as "the first child-custody determination concerning a particular child." N.C. Gen. Stat. § 50A-102(8) (2007). In the present case, a custody order regarding the juvenile was entered on 4 January 2000 by the New York court. Thus, the North Carolina trial court did not have jurisdiction under N.C. Gen. Stat. § 50A-201 to enter the adjudication order.

The third provision of the UCCJEA, N.C. Gen. Stat. § 50A-203 (2007), addresses the jurisdictional requirements for the modification of child-custody determinations. A "modification" is defined as "a child-custody determination that changes, replaces, supersedes, or is otherwise made after a previous determination concerning the same child, whether or not it is made by the court that made the previous determination." N.C. Gen. Stat. § 50A-102(11) (2007). A North Carolina court cannot modify a child-custody determination made by another state unless two requirements are met. N.C. Gen. Stat. § 50A-203. First, the North Carolina court must have jurisdiction to make an initial determination. *Id.* N.C. Gen. Stat. § 50A-201(a)(1) provides for jurisdiction if North Carolina is the "home state of the child on the date of the commencement of the proceeding[.]" N.C. Gen. Stat. § 50A-201(a)(1) (2007). "Home state" is defined as

---

2. Because we conclude the trial court lacked subject matter jurisdiction under the UCCJEA, we need not address whether the trial court lacked subject matter jurisdiction under the PKPA.

**IN RE J.W.S.**

[194 N.C. App. 439 (2008)]

the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding. . . . A period of temporary absence of any of the mentioned persons is part of the period.

N.C. Gen. Stat. § 50A-102(7) (2007). In this case, juvenile petitions were filed 21 and 25 April and 16 August 2006. Respondent moved with the juvenile from New York to North Carolina in approximately 2002. They remained in North Carolina until approximately January 2006, when they began traveling back and forth between Texas and North Carolina. Respondent signed a one-year lease on a North Carolina residence in April 2006, which he used as his home address. As Respondent's temporary absences from North Carolina during the months of January through April are part of the required period of residency, N.C. Gen. Stat. § 50A-102(7), the home state requirement was satisfied here.

Even where North Carolina is the home state of the child, however, in order for a North Carolina court to modify a custody determination of another state, one of the following requirements must also be met:

(1) The court of the other state determines it no longer has exclusive, continuing jurisdiction under G.S. 50A-202 or that a court of this State would be a more convenient forum under G.S. 50A-207; or

(2) A court of this State or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state.

N.C. Gen. Stat. § 50A-203.

A. Jurisdiction Under
N.C. Gen. Stat. § 50A-203(1)

1. Exclusive, Continuing Jurisdiction Under N.C. Gen. Stat. § 50A-202

The court of the other state would no longer have exclusive, continuing jurisdiction under N.C. Gen. Stat. § 50A-202 if:

(1) [that court] determines that . . . the child, the child's parents, and any person acting as a parent [no longer have] a significant connection with this State and that substantial evidence is no

longer available in this State concerning the child's care, protection, training, and personal relationship; or

-     (2) [that court] or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this State.

N.C. Gen. Stat. § 50A-202(a).

"The official comment to [subsection (1)] clarifies that 'the original decree State is the sole determinant of whether jurisdiction continues. A party seeking to modify a custody determination must obtain an order from the original decree State stating that it no longer has jurisdiction.' Official Comment to N.C.G.S. § 50A-202." *In re N.R.M.*, 165 N.C. App. 294, 300, 598 S.E.2d 147, 151 (2004). In the case before this Court, although the trial court found that "the State of New York has not opted to exercise jurisdiction[,]" there is no order from the New York court in the record before us stating that New York no longer has jurisdiction. Moreover, while the record contains a letter from the New York court stating that "[i]t appears that North Carolina has exclusive and continuing jurisdiction over the custody of [the juvenile,]" this letter was faxed on 19 December 2007, more than eight months after the 2 April 2007 adjudication order was entered. Furthermore, the letter was directed to DSS in response to DSS's inquiry into a matrimonial action in the state of New York and was not an order directed to the trial court in the juvenile matter in this case. Accordingly, the New York court did not lose jurisdiction under N.C. Gen. Stat. § 50A-202(a)(1).

Furthermore, at the time of the petition herein, the juvenile's mother continued to reside in New York. Thus, New York did not lose continuing jurisdiction based on N.C. Gen. Stat. § 50A-202(a)(2).

### 2. More Convenient Forum Under N.C. Gen. Stat. § 50A-207

Under N.C. Gen. Stat. § 50A-203(1), New York could relinquish jurisdiction to North Carolina if the New York court determined that a North Carolina court would be a more convenient forum under N.C. Gen. Stat. § 50A-207. Again, however, there is no order from the New York court in the record showing that New York made such a determination.

Accordingly, neither method of obtaining jurisdiction under N.C. Gen. Stat. § 50A-203(1) is satisfied.

### B. Jurisdiction Under
### N.C. Gen. Stat. § 50A-203(2)

N.C. Gen. Stat. § 50A-203(2) provides for jurisdiction if either the issuing state or the state attempting to modify the order determines that the child, the child's parents, and any person acting as a parent have left the issuing state. In the case before this Court, at the time of the petition, the record shows the juvenile's mother was residing in New York. Because the juvenile's mother continued to live in New York, N.C. Gen. Stat. § 50A-203(2) was not satisfied even though Respondent and the juvenile had left New York and moved to North Carolina.

Consequently, the trial court did not have jurisdiction to enter the adjudication order under N.C. Gen. Stat. § 50A-203(1) or (2).

### C. Temporary Emergency Jurisdiction
### Under N.C. Gen. Stat. § 50A-204

A North Carolina court that does not have jurisdiction under N.C. Gen. Stat. §§ 50A-201 or 50A-203 has temporary emergency jurisdiction

> if the child is present in this State and . . . it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse.

N.C. Gen. Stat. § 50A-204(a). The statute further provides:

> (c) If there is a previous child-custody determination that is entitled to be enforced under this Article, . . . any order issued by a court of this State under this section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction . . . . The order issued in this State remains in effect until an order is obtained from the other state within the period specified or the period expires.

> (d) A court of this State which has been asked to make a child-custody determination under this section, upon being informed that a . . . child-custody determination has been made by [] a court of [another] state . . . shall immediately communicate with the [other court].

N.C. Gen. Stat. §§ 50A-204(c)-(d) (2007). Additionally, a record of the trial court's communication mandated by N.C. Gen. Stat.

§ 50A-204(d) must be made and the parties must be promptly informed of the communication and granted access to the record. N.C. Gen. Stat. § 50A-110 (2007).

Here, the juvenile was present in North Carolina when the nonsecure custody orders were entered and such orders were based on evidence gathered by DSS that the juvenile was abused, neglected, and dependent. The trial court, therefore, had authority under N.C. Gen. Stat. § 50A-204(a) to enter the temporary nonsecure custody orders.

However, the trial court became aware of the New York custody order on 17 November 2006 at the hearing on Respondent's motions to dismiss the 16 August 2006 juvenile petition. In the 9 February 2007 order denying Respondent's motions to dismiss, the trial court concluded that although "New York made an initial child-custody determination in January 2000, and the child's mother . . . continues to reside in New York[,]" the trial court had "temporary, emergency jurisdiction over this matter and the parties pursuant to [N.C. Gen. Stat. § 50A-204.]" The trial court then concluded that, pursuant to N.C. Gen. Stat. § 50A-204(d), it would "immediately communicate with the court in Allegany County, New York to resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of this Court's orders."

The trial court then held an adjudicatory hearing on 26 January 2007 and 9 March 2007. In its 2 April 2007 adjudication order, the trial court found, *inter alia*:

Since the issuance of the [trial court's] decision denying the motions to dismiss, the State of New York has not opted to exercise jurisdiction . . . .

. . . .

Whereas the State of New York has opted not to exercise jurisdiction . . . this Court shall continue to exercise jurisdiction over this matter.

However, there is no record evidence that the trial court ever communicated with the New York court, as mandated by N.C. Gen. Stat. §§ 50A-204(d) and 50A-110 or as ordered by the trial court on 9 February 2007, to determine if the New York court "opted not to exercise jurisdiction[.]"

In its order denying Respondent's motion to set aside the adjudication order, the trial court found, *inter alia*:

1. On January 4, 2000, in the Family Court of Allegany County, New York (hereinafter "New York Court"), [the juvenile's] mother [] was granted temporary custody of [the juvenile] "pending the criminal court action. Thereafter, either party may petition for custody." (Order dated January 4, 2000, Docket No. V-2-00, New York Court). [The juvenile's mother] continues to reside in New York.

2. There are no other known proceedings pertaining to [the juvenile's] custody that occurred in the State of New York, and there is no evidence that the January 4, 2000 order is currently enforceable. Further, it appears from this Court's record that [Respondent] left New York with [the juvenile] a couple of years later—the exact date is unknown.

. . . .

26. At the conclusion of the hearing [on Respondent's motions to dismiss the juvenile petitions], this Court found *inter alia* that: (1) this Court had temporary, emergency jurisdiction pursuant to §50A-204; (2) [Respondent] resided in North Carolina with [the juvenile] continuously for four to five years prior to the petitions having been filed, and moved between Texas and North Carolina from February 2006 through April 2006. This Court entered an order consistent with its findings, directing that it would communicate with the State of New York to resolve the emergency and determine a period for the duration of this Court's orders.

. . . .

58. In December 2007, after receiving information that [Respondent] had filed a matrimonial action in the State of New York, the [Carteret County Department of Social Services ("CCDSS")] attorney contacted the New York Court. The CCDSS attorney filed the New York Court's December 19, 2007 faxed letter of response on December 19, 2007. That response states in pertinent part, "It appears that North Carolina has exclusive and continuing jurisdiction over the custody of [the juvenile]."

While there is evidence in the record of the trial court's communications with the Texas and Virginia courts regarding jurisdictional conflicts, the record is devoid of evidence that the trial court ever communicated with the New York court to determine if the New York court wished to exercise jurisdiction, to determine whether "the January 4, 2000 order is currently enforceable[,]" or "to . . . determine a period for the duration of [the trial court's] orders."

In *In re Malone,* 129 N.C. App. 338, 498 S.E.2d 836 (1998),[3] where a Florida court had previously exercised jurisdiction over the custody of the juvenile at issue, this Court determined that the trial court had emergency jurisdiction to enter a temporary nonsecure custody order, but at the point at which the order was entered, " 'the trial court was required to defer any further proceedings in the matter pending a response from [Florida] as to whether that state was willing to assume jurisdiction to resolve the issues of abuse[.]' " *Id.* at 344, 498 S.E.2d at 840 (quoting *In re Van Kooten,* 126 N.C. App. 764, 771, 487 S.E.2d 160, 164 (1997)). Although the Durham County Department of Social Services ("DCDSS") had contacted the Florida Department of Human Rehabilitative Services ("HRS") as well as the Sheriff's Department in Collier County, and HRS indicated to DSS that it had no jurisdiction over the child since she no longer lived in Florida, this Court held that

> this is not sufficient contact under the mandate of our state statute that requires the *trial court* to directly contact the Florida court to determine if Florida is willing to exercise jurisdiction in this case. . . . The *trial court* must make the contact with the Florida court.

*Id.* at 345, 498 S.E.2d at 840 (emphasis added). Accordingly, this Court reversed and remanded to the trial court "to directly contact the appropriate Florida court to determine if Florida is willing to assume jurisdiction to resolve the issue." *Id.*

In this case, although a DSS attorney contacted the New York court more than eight months after the adjudication order had been entered, and the response from the New York court indicated that North Carolina had jurisdiction over the custody of the juvenile, "this is not sufficient contact under the mandate of our state statute that requires the trial court to directly contact the [New York] court to

---

3. This case applied N.C. Gen. Stat. §§ 50A-6(b) and (c) (1989) of the former Uniform Child Custody Jurisdiction Act. Section (b) stated that before hearing a petition for child custody, the court shall check the pleadings and other available resources to determine if any such proceedings are pending in another state and that "[i]f the court has reason to believe that proceedings may be pending in another state it shall direct an inquiry to the state court administrator or other appropriate official of the other state." N.C. Gen. Stat. § 50A-6(b).

Section (c) mandated that when a trial court hearing a child custody matter is informed that a proceeding concerning custody of the child was pending in another state before the trial court assumed jurisdiction, it "shall stay the proceeding and communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum[.]" N.C. Gen. Stat. § 50A-6(c).

IN RE I.T.P-L.

[194 N.C. App. 453 (2008)]

determine if [New York] is willing to exercise jurisdiction in this case." *Id. See* N.C. Gen. Stat. § 50A-204(d). "The fact that DSS made efforts to contact [the New York court] does not meet the requirement of the statute. The trial court must make the contact with the [New York] court." *Malone*, 129 N.C. App. at 345, 498 S.E.2d at 840.

Petitioners attempt to distinguish the present case from *Malone* by asserting that "the State of New York's custodial order was no longer an enforceable order." However, there is no record evidence that the 4 January 2000 temporary custody determination made by the New York court was not "currently enforceable." While the order granted custody of the child to the child's mother "pending the criminal court action[,]" there is no evidence showing that the criminal action ever concluded or that the order expired for any other reason.

Accordingly, while the trial court had temporary jurisdiction to enter the nonsecure custody orders, the trial court did not have jurisdiction, exclusive or temporary, to enter the juvenile adjudication order. We thus reverse the trial court's order entered 7 February 2008 denying Respondent's motion to set aside the juvenile adjudication order entered 2 April 2007. As a result of this decision, we need not address Respondent's remaining arguments on appeal.

REVERSED.

Judges McCULLOUGH and JACKSON concur.