**IN RE K.U.-S.G., D.L.L.G., & P.T.D.G.**

[208 N.C. App. 128 (2010)]

IN RE: K.U.-S.G., D.L.L.G., AND P.T.D.G., MINOR CHILDREN

No. COA10-695

(Filed 16 November 2010)

**Termination of Parental Rights— Uniform Child Custody Jurisdiction and Enforcement Act—modification of custody order—no subject matter jurisdiction**

> The trial court lacked subject matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act to terminate respondent's parental rights. The order for termination modified an existing custody order entered by a Pennsylvania court and although the trial court satisfied the "home state" requirement, Pennsylvania had not lost continuing jurisdiction, Pennsylvania had not determined that North Carolina was a more convenient forum, and respondent continued to reside in Pennsylvania.

Appeal by respondent from order entered 4 March 2010 by Judge Sherry F. Alloway in Guilford County District Court. Heard in the Court of Appeals 18 October 2010.

*E. Danielle Caldwell and Kathryn S. Lindley for petitioners-appellees.*

*Mary McCullers Reece for respondent-appellant mother.*

HUNTER, Robert C., Judge.

Respondent-mother Sylvia G. appeals from the trial court's order terminating her parental rights with respect to her three children: P.T.D.G. ("Paul") (born June 2000), D.L.L.G. ("Dana") (born January 2002), and K.U.-S.G. ("Katie") (born December 2002).[1] We agree with respondent's threshold contention that the trial court lacked subject-matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") to terminate her parental rights, and, consequently, we vacate the court's order.

Facts

In 2002, Paul and Dana were living with respondent in Fayette County, Pennsylvania. On 1 November 2002, Fayette County Children

---

1. Pseudonyms are used throughout this opinion for the protection of the juveniles' privacy and ease of reading.

and Youth Services (FCCYS) filed a petition with the Court of Commons Pleas of Fayette County, alleging that Paul and Dana were neglected and dependant juveniles based on "lack of supervision issues." On 5 November 2002, the Pennsylvania court entered an order adjudicating Paul and Dana to be dependent juveniles and placed them in the "care, custody and supervision of [FCCYS] for foster home placement."

Shortly after Katie's birth in December 2002, FCCYS filed a juvenile petition alleging that she was a dependent juvenile. Respondent and her mother entered into a "safety plan" with FCCYS, agreeing to placement of Katie with her grandmother, with the condition that respondent not be allowed to have "unsupervised contact with [Katie]." Based on the safety plan, the Pennsylvania court entered an order on 13 December 2002, adjudicating Katie dependent and granting custody to Katie's grandmother, "until such time that [respondent] has satisfactorily completed her Family Service Plan . . . ." On 29 January 2002, however, FCCYS filed a petition for custody of Katie after it discovered that respondent and her mother "had not been abiding by the safety plan." That same day, the Pennsylvania court granted FCCYS temporary custody of Katie. After conducting a hearing on 24 February 2003, the Pennsylvania Court entered an order the next day continuing custody of Katie with FCCYS.

FCCYS subsequently placed all three children with respondent's great aunt and uncle, petitioners Curtis and Sara H., who are licensed foster parents in Pennsylvania. FCCYS worked with respondent on the family services plans established in the juvenile cases, but ultimately filed petitions on 11 May 2004 to terminate her parental rights with respect to all three juveniles. A hearing was held on 22 July 2004 regarding the petitions, but was continued pending completion of a "bonding assessment," and the goal for the juveniles remained reunification. At the second hearing on the termination petitions, held on 6 December 2004, FCCYS consented to giving respondent an additional six months to complete her service plan, and the hearing was rescheduled for June 2005.

On 31 May 2005, FCCYS filed a "Petition to Discharge" with respect to each juvenile, indicating that petitioners intended to move within the next month to North Carolina for work, but that FCCYS would be unable to permit the juveniles to move out of state while in the legal custody of FCCYS without obtaining "prior interstate approval," which could take several months to complete. FCCYS

requested that the court change the goal of the juveniles to "Placement with a Permanent Legal Custodian" and discharge the juveniles to the "permanent legal custody" of petitioners. Attached to the petitions were statements signed by respondent, the attorneys representing the juveniles, and petitioners, indicating that they all "join[ed] in and consent[ed] to the relief sought in the foregoing petition[s]." In orders entered 1 June 2005, the Pennsylvania court changed the juveniles' goal to placement with a permanent legal custodian and "discharged [the juveniles] to the custody of [petitioners]." The court also ordered that respondent continue to have supervised visitation with her children.

While petitioners and the juveniles moved to North Carolina, respondent remained in Pennsylvania. The juveniles lived in North Carolina until August 2006, when petitioners agreed that the juveniles should return to Pennsylvania to live with respondent. On 21 August 2006, petitioners and respondent entered a "Consent Order for Child Custody" in the District Court of Guilford County, North Carolina. In the order, the parties agreed that the North Carolina court had jurisdiction over the parties and the subject matter of the action and purported to "waive any further requirements of the Uniform Child Custody Jurisdiction and Enforcement Act." The consent order gave custody of the three children to respondent and "awarded visitation privileges" to petitioners.

The juveniles lived in Pennsylvania with respondent until April 2007, when respondent asked petitioners to take the juveniles back to North Carolina, stating that she would move to North Carolina in June 2007 after she finished nursing school. In June 2007, however, respondent was arrested in Pennsylvania on drug possession charges and remained in Pennsylvania pending resolution of the criminal charges. In January 2008, respondent signed a voluntary support order, agreeing to pay petitioners $105.00 a month in child support. Respondent also provided petitioners with a "notarized . . . paper" giving petitioners guardianship of her children. In October 2008, respondent was convicted of the drug charges and incarcerated in Pennsylvania, with a projected release date of 17 October 2010.

On 10 June 2009, petitioners filed petitions to terminate respondent's parental rights with respect to all three juveniles, alleging that respondent had failed to provide financial support for the juveniles as agreed in the voluntary support order, had abandoned the juveniles, and had not provided any emotional support for the juveniles.

**IN RE K.U.-S.G., D.L.L.G., & P.T.D.G.**

[208 N.C. App. 128 (2010)]

Respondent filed a reply on 15 October 2009, generally denying the allegations regarding the existence of grounds to terminate her parental rights. After hearings were held on 8 January and 7 February 2010, the trial court entered an order on 4 March 2010, terminating respondent's parental rights with respect to Paul, Dana, and Katie. Respondent timely appealed to this Court.

## Discussion

Respondent's threshold argument on appeal is that the trial court lacked subject-matter jurisdiction under the UCCJEA, N.C. Gen. Stat. §§ 50A-101 through -317 (2009), to terminate her parental rights. Whether a trial court has subject-matter jurisdiction is a question of law, reviewed de novo on appeal. *Harper v. City of Asheville*, 160 N.C. App. 209, 213, 585 S.E.2d 240, 243 (2003). Subject-matter jurisdiction "involves the authority of a court to adjudicate the type of controversy presented by the action before it." *Haker-Volkening v. Haker*, 143 N.C. App. 688, 693, 547 S.E.2d 127, 130, *disc. review denied*, 354 N.C. 217, 554 S.E.2d 338 (2001). Subject-matter jurisdiction derives from the law that organizes a court and cannot be conferred on a court by action of the parties or assumed by a court except as provided by that law. *In re Peoples*, 296 N.C. 109, 144, 250 S.E.2d 890, 910 (1978), *cert. denied sub nom. Peoples v. Judicial Standards Comm'n of N.C.*, 442 U.S. 929, 61 L. Ed. 2d 297 (1979). "When a court decides a matter without the court's having jurisdiction, then the whole proceeding is null and void, *i.e.*, as if it had never happened." *Hopkins v. Hopkins*, 8 N.C. App. 162, 169, 174 S.E.2d 103, 108 (1970). Thus the trial court's subject-matter jurisdiction may be challenged at any stage of the proceedings, even for the first time on appeal. *In re T.R.P.*, 360 N.C. 588, 595, 636 S.E.2d 787, 793 (2006).

Our Juvenile Code grants district courts

> exclusive original jurisdiction to hear and determine any petition or motion relating to termination of parental rights to any juvenile who resides in, is found in, or is in the legal or actual custody of a county department of social services or licensed child-placing agency in the district at the time of filing of the petition or motion.

N.C. Gen. Stat. § 7B-1101 (2009). Nevertheless, the jurisdictional requirements of the UCCJEA also must be satisfied for the district court to have authority to adjudicate termination actions. *In re N.R.M.*, 165 N.C. App. 294, 298, 598 S.E.2d 147, 149 (2004). As is the

case here, in order to terminate the parental rights of a non-resident parent, the court must "find that it has jurisdiction to make a child-custody determination under the provisions of G.S. 50A-201 or G.S. 50A-203, without regard to G.S. 50A-204 . . . ." N.C. Gen. Stat. § 7B-1101; *see also In re E.X.J.*, 191 N.C. App. 34, 44, 662 S.E.2d 24, 30 (2008) (noting that, based on N.C. Gen. Stat. § 7B-1101, UCCJEA § 204's temporary emergency jurisdiction does not provide basis for terminating parental rights of non-resident), *aff'd per curiam*, 363 N.C. 9, 672 S.E.2d 19 (2009).

## I. Jurisdiction under UCCJEA Section 201

The first provision of the UCCJEA, N.C. Gen. Stat. § 50A-201, "addresses the jurisdictional requirements for initial child-custody determinations." *In re J.W.S.*, 194 N.C. App. 439, 446, 669 S.E.2d 850, 854 (2008). The UCCJEA defines an "initial determination" as "the first child-custody determination concerning a particular child." N.C. Gen. Stat. § 50A-102(8). Here, the record establishes that the initial custody determinations with respect to all three juveniles were made by the Pennsylvania Court of Common Pleas in Fayette County. Consequently, the North Carolina court lacked jurisdiction under N.C. Gen. Stat. § 50A-201 to enter an order terminating respondent's parental rights. *See N.R.M.*, 165 N.C. App. at 298, 598 S.E.2d at 150 (holding trial court lacked jurisdiction under UCCJEA § 201 to enter termination order where initial "custody issues have already been addressed by an Arkansas court").

## II. Jurisdiction under UCCJEA Section 203

The UCCJEA's remaining jurisdictional provision pertinent here, N.C. Gen. Stat. § 50A-203, "outlines the requirements for a North Carolina court to have jurisdiction to modify a child-custody determination." *N.R.M.*, 165 N.C. App. at 299, 598 S.E.2d at 150. "Modification" is defined as "a child-custody determination that changes, replaces, supersedes, or is otherwise made after a previous determination concerning the same child, whether or not it is made by the court that made the previous determination." N.C. Gen. Stat. § 50A-102(11).

In this case, the Pennsylvania court entered orders on 1 June 2005 granting legal custody of the juveniles to petitioners and allowing respondent supervised visitation. Thus, at the time the North Carolina termination petitions were filed, there was an existing order from another state pertaining to the juveniles. Consequently, "any

**IN RE K.U.-S.G., D.L.L.G., & P.T.D.G.**

[208 N.C. App. 128 (2010)]

change to th[ose] [Pennsylvania] order[s] qualif[y] as a modification under the UCCJEA." *N.R.M.*, 165 N.C. App. at 299, 598 S.E.2d at 150.

Under the UCCJEA, a North Carolina court may not modify a child-custody determination made by another state unless two requirements are satisfied: (1) the North Carolina court "has jurisdiction to make an initial determination under G.S. 50A-201(a)(1) or G.S. 50A-201(a)(2)"; and (2)(a) a court of the issuing state determines either that it "no longer has exclusive, continuing jurisdiction" under UCCJEA § 202 or that the North Carolina court would be a "more convenient forum" under UCCJEA § 207; or (b) a North Carolina court or a court of the issuing state "determines that the child, the child's parents, and any person acting as a parent do not presently reside in the [issuing] state." N.C. Gen. Stat. § 50A-203; *see also In re T.J.D.W.*, 182 N.C. App. 394, 396-97, 642 S.E.2d 471, 473 (explaining that only when UCCJEA § 203's "two conditions are fulfilled" may a North Carolina court modify another state's custody determination), *disc. review denied in part*, 361 N.C. 568, 651 S.E.2d 562, *aff'd per curiam in part*, 362 N.C. 84, 653 S.E.2d 143 (2007).

## II.A Jurisdiction to Make Initial Custody Determination

N.C. Gen. Stat. § 50A-203's first requirement for modification is that the North Carolina court must have "jurisdiction to make an initial determination under G.S. 50A-201(a)(1) or G.S. 50A-201(a)(2) . . . ." N.C. Gen. Stat. § 50A-203. N.C. Gen. Stat. § 50A-201(a)(1), in turn, provides for jurisdiction if North Carolina is the "home state of the child on the date of the commencement of the proceeding . . . ." N.C. Gen. Stat. § 50A-201(a)(1). A child's "home state" is defined as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding." N.C. Gen. Stat. § 50A-102(7).

Here, the record indicates that Paul, Dana, and Katie have been living with petitioners in North Carolina at least since April 2007 and that the termination petitions were filed in June 2009. Consequently, N.C. Gen. Stat. § 50A-201(a)(1)'s "home state" requirement is satisfied in this case. *See N.R.M.*, 165 N.C. App. at 299, 598 S.E.2d at 150 ("[T]he children had been living in New Hanover County since 1 August 2000, and the petition was filed 21 March 2002. Thus, the home state requirement was satisfied.").

## II.B.1 Exclusive, Continuing Jurisdiction

The UCCJEA provides three options for satisfying its second requirement for jurisdiction to modify another state's custody determination. First, a North Carolina court may enter an order modifying another state's custody determination if a court of the issuing state concludes that it no longer has exclusive, continuing jurisdiction under the UCCJEA. The court of the issuing state loses "exclusive, continuing jurisdiction" under the UCCJEA if:

(1) [it] determines that . . . the child, the child's parents, and any person acting as a parent [no longer] have a significant connection with th[at] State and that substantial evidence is no longer available in th[at] State concerning the child's care, protection, training, and personal relationships; or

(2) [it] or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in th[e] [issuing] State.

N.C. Gen. Stat. § 50A-202(a). The official comment to N.C. Gen. Stat. § 50A-202(a)(1) "clarifies that 'the original decree State is the sole determinant of whether jurisdiction continues. A party seeking to modify a custody determination must obtain an order from the original decree State stating that it no longer has jurisdiction.' " *N.R.M.*, 165 N.C. App. at 300, 598 S.E.2d at 151 (quoting N.C. Gen. Stat. § 50A-202 official cmt.).

Here, although the North Carolina court stated that it had contacted "the Court of Common Pleas, Fayette County, Juvenile Division and determined that Fayette County no longer wished to retain jurisdiction," the record does not include an order from a Pennsylvania court indicating that Pennsylvania no longer has jurisdiction. Consequently, the Pennsylvania court did not lose jurisdiction under N.C. Gen. Stat. § 50A-202(a)(1). *See J.W.S.*, 194 N.C. App. at 448, 669 S.E.2d at 855-56 ("In the case before this Court, although the trial court found that 'the State of New York has not opted to exercise jurisdiction [,]' there is no order from the New York court in the record before us stating that New York no longer has jurisdiction. . . . Accordingly, the New York court did not lose jurisdiction under N.C. Gen. Stat. § 50A-202(a)(1)."). Respondent, moreover, was incarcerated in Pennsylvania when this termination action was initiated in North Carolina. Pennsylvania, therefore, did not lose jurisdiction based on N.C. Gen. Stat. § 50A-202(a)(2). *See N.R.M.*, 165 N.C. App. at

300, 598 S.E.2d at 151 ("[A]t the time of the petition, respondent resided in Arkansas[,] so Arkansas did not lose continuing jurisdiction based on N.C. Gen. Stat. § 50A-202(a)(2).").

## II.B.2 More Convenient Forum Jurisdiction

Pursuant to UCCJEA § 203(1), Pennsylvania may relinquish jurisdiction to North Carolina if the Pennsylvania court determines that a North Carolina court would be a more convenient forum under UCCJEA § 207. *J.W.S.*, 194 N.C. App. at 448, 669 S.E.2d at 856. Again, however, nothing in the record suggests that a Pennsylvania court made such a determination. Consequently, "neither method of obtaining jurisdiction under N.C. Gen. Stat. § 50A-203(1) is satisfied." *J.W.S.*, 194 N.C. App. at 448, 669 S.E.2d at 856.

## II.B.3 Jurisdiction under UCCJEA Section 203(2)

N.C. Gen. Stat. § 50A-203(2) "provides for jurisdiction if either the issuing state or the state attempting to modify the order determines that the child, the child's parents, and any person acting as a parent have left the issuing state." *J.W.S.*, 194 N.C. App. at 449, 669 S.E.2d at 856; *see also* N.C. Gen. Stat. § 50A-203 official cmt. (explaining that the "only exception" to general prohibition against "[t]he modification State . . . determin[ing] that the original decree State has lost its jurisdiction" is when "all parties have moved away from the original State"). The record in this case indicates that respondent, being incarcerated in state prison, continues to reside in Pennsylvania. Thus, despite petitioners' moving to North Carolina with the juveniles, jurisdiction under N.C. Gen. Stat. § 50A-203(2) is not established. *See N.R.M.*, 165 N.C. App. at 301, 598 S.E.2d at 151 ("Because respondent continued to live in Arkansas, subsection (2) [of UCCJEA § 203] was not satisfied even though petitioner and the children had left Arkansas and moved to North Carolina."). The trial court, therefore, lacked subject-matter jurisdiction under the UCCJEA to enter an order terminating respondent's parental rights. Accordingly, the trial court's order is vacated.

Vacated.

Judges STROUD and Robert N. HUNTER, Jr. concur.