NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

4th Circuit Court-Laconia Family Division
No. 2019-0126

IN RE GUARDIANSHIP OF K.B.

Argued: September 18, 2019
Opinion Issued: October 25, 2019

Hansen Law Offices, PLLC, of Kennebunk, Maine (Albert Hansen on the brief and orally), for the petitioner.

Orr & Reno, P.A., of Concord (Jeremy D. Eggleton on the brief and orally), for the respondents.

HANTZ MARCONI, J. The petitioner appeals an order of the Circuit Court (Carroll, Referee, approved by Garner, J.) denying her petition to modify or terminate the guardianship of the respondents over her minor biological daughter, K.B. The guardianship was granted by a court of the State of Connecticut in 2010. Because we conclude that the circuit court did not have jurisdiction over this petition to modify another state's child-custody determination, see RSA 458-A:14 (2018), we vacate and remand with instructions to dismiss the petition.

The record supports the following relevant facts. The petitioner gave birth to K.B. in Connecticut in September 2007. The State of Connecticut removed K.B. from the petitioner's care shortly thereafter. K.B. has resided with the respondents, respectively, her paternal grandmother and step-

grandfather, since 2008.  The respondents have been K.B.'s guardians since 2010.  The respondents and K.B. lived in New Hampshire from 2008 until the summer of 2018, when they moved to Maine.  The petitioner also lives in Maine.  According to the circuit court's order, the whereabouts of K.B.'s biological father, who is not a party to this action, are "not known."  The petitioner alleged that K.B.'s father still lives in Connecticut, though neither the petitioner nor the respondents have had any contact with him recently.

The respondents' guardianship over K.B. was originally granted by an order of the Superior Court of Connecticut dated April 13, 2010.  In that order, the Connecticut court, in addition to granting the guardianship, stated the following: "court finds the child a resident of New Hampshire, in 6 months, NH would be the proper jurisdiction for reinstatement of parental guardianship." (Capitalization omitted.)  In an order dated July 8, 2010, however, that same court vacated its April order and entered a new order granting the respondents a guardianship over K.B.  The July order does not contain any language regarding the child's residence in New Hampshire or whether New Hampshire would be the proper jurisdiction for modification of the guardianship.

The instant petition was filed in the circuit court in 2017.  It sought to modify or terminate the respondents' guardianship over K.B. on the ground that "substitution or supplementation of parental care . . . is no longer necessary."  The respondents filed an answer, as well as a motion to dismiss. After a hearing, the court denied the petition, concluding that, under Connecticut law, the respondents' guardianship was permanent and therefore not subject to modification.  The petitioner subsequently filed a motion for reconsideration, which the court denied, and this appeal followed.

Because this appeal involves a petition to modify or terminate another state's child-custody determination, we must first determine whether the circuit court had subject matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA).  See In re G. B., 167 N.H. 99, 102 (2014) ("The UCCJEA governs when a court of this state has jurisdiction to make or modify a child custody determination."); see also Unif. Child Custody Jurisdiction & Enforcement Act § 201, cmt., 9-IA U.L.A. 673 (1999) (noting that "jurisdiction to make a child custody determination is subject matter jurisdiction").  Subject matter jurisdiction is jurisdiction over the nature of the case and the type of relief sought.  Appeal of Cole, 171 N.H. 403, 408 (2018).  A court lacks power to hear or determine a case concerning subject matter over which it has no jurisdiction.  Id.  A party may challenge subject matter jurisdiction at any time during the proceeding, including on appeal, and may not waive subject matter jurisdiction.  Id.  The court may also raise subject matter jurisdiction sua sponte.  State v. Demesmin, 159 N.H. 595, 597 (2010). The scope of a court's jurisdiction pursuant to a statute, such as the UCCJEA, presents a question of law.  See Cole, 171 N.H. at 408.

2

To resolve this jurisdictional issue, we must interpret the UCCJEA as it has been enacted in New Hampshire. We rely upon our ordinary rules of statutory construction in doing so. See In the Matter of Ball & Ball, 168 N.H. 133, 137 (2015). Under those rules, we are the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole. Id. We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Id. Where a statute defines a particular word or phrase, however, that definition will govern. See EEOC v. Fred Fuller Oil Co., 168 N.H. 606, 613 (2016). We construe all parts of a statute together to effectuate its overall purpose and to avoid an absurd or unjust result. Ball, 168 N.H. at 137.

In addition to our ordinary rules of statutory construction, we may consider the official comments to the UCCJEA. See In the Matter of Scott & Pierce, 160 N.H. 354, 359 (2010). The consideration of official comments is sensible because, as we have previously explained, "'the intention of the drafters of a uniform act becomes the legislative intent upon enactment.'" Ball, 168 N.H. at 137 (quoting Hennepin County v. Hill, 777 N.W.2d 252, 256 (Minn. Ct. App. 2010)). We may also consider the interpretation of the UCCJEA by other jurisdictions. See id. Opinions from courts in other jurisdictions are relevant "'because uniform laws should be interpreted to effect their general purpose to make uniform the laws of those states that enact them.'" Id. at 137-38 (quoting Hill, 777 N.W.2d at 257); accord In the Matter of McAndrews & Woodson, 171 N.H. 214, 220 (2018).

"[T]he UCCJEA establishes the criteria for deciding which state's courts have subject matter jurisdiction to make a child custody decision involving interstate custody disputes." Harshberger v. Harshberger, 724 N.W.2d 148, 153 (N.D. 2006). It has been adopted in all fifty states. Monica Hof Wallace, A Primer on Child Custody in Louisiana, 65 Loy. L. Rev. 1, 158 (2019). New Hampshire adopted the UCCJEA in 2009. McAndrews, 171 N.H. at 218; see RSA ch. 458-A (2018). The UCCJEA replaced the Uniform Child Custody Jurisdiction Act (UCCJA), which New Hampshire had adopted in 1979. In the Matter of Yaman & Yaman, 167 N.H. 82, 87 (2014).

The UCCJEA was promulgated, in part, to resolve issues resulting from decades of conflicting court decisions interpreting and applying the UCCJA. McAndrews, 171 N.H. at 218. "The UCCJA turned out to have exploitable loopholes allowing for concurrent jurisdiction in more than one state, which encouraged jurisdictional competition . . . and forum shopping." David Carl Minneman, Annotation, Construction and Operation of Uniform Child Custody Jurisdiction and Enforcement Act, 100 A.L.R.5th 1, 1 (2002). The UCCJEA addressed these problems, in part, by making clear that "[t]he continuing jurisdiction of the original decree State is exclusive." Unif. Child Custody Jurisdiction & Enforcement Act § 202, cmt., 9-IA U.L.A. 674; see id. § 202(a), 9-IA U.L.A. 155 (Supp. 2017); RSA 458-A:13, I. In addition, the purposes of

3

the UCCJEA, as described by its promulgating body, the National Conference of Commissioners on Uniform State Laws, are, inter alia, to "'[a]void jurisdictional competition and conflict with courts of other States in matters of child custody,'" to "'[d]iscourage the use of the interstate system for continuing controversies over child custody,'" and to "'[a]void relitigation of custody decisions of other States in this State.'" Yaman, 167 N.H. at 87 (quoting Unif. Child Custody Jurisdiction & Enforcement Act § 101, cmt., 9-IA U.L.A. 657).

The UCCJEA provides for two primary types of jurisdiction. Id.; see RSA 458-A:12; RSA 458-A:14. First, a court may have jurisdiction to make an initial child-custody determination. RSA 458-A:12; see also RSA 458-A:1, III (defining "[c]hild-custody determination" in pertinent part as "a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child," and specifying further that "[t]he term includes a permanent, temporary, initial, and modification order"), VIII (defining "[i]nitial determination" as "the first child-custody determination concerning a particular child"). Second, a court may have jurisdiction to modify a previous child-custody determination. See RSA 458-A:14; see also RSA 458-A:1, XI (defining "[m]odification" as "a child-custody determination that changes, replaces, supersedes, or is otherwise made after a previous determination concerning the same child, whether or not it is made by the court that made the previous determination"). We first discuss initial child-custody jurisdiction.

A court has jurisdiction to make an initial child-custody determination if the state in which the court is located is the "home state of the child on the date of the commencement of the proceeding," or if it "was the home state of the child within 6 months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state." RSA 458-A:12, I(a); see also RSA 458-A:1, VII (defining "[h]ome state"). In addition, a court has initial child-custody jurisdiction if:

> A court of another state does not have jurisdiction under [RSA 458-A:12, I(a)], or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under RSA 458-A:18 or RSA 458-A:19, and:
>
> > (1) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and
> >
> > (2) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

4

RSA 458-A:12, I(b)(1)-(2); see also RSA 458-A:12, I(c)-(d) (providing two additional avenues by which a court may have initial child-custody jurisdiction).

Turning now to modification jurisdiction, two requirements must be satisfied in order for a court to have jurisdiction to modify another state's child-custody determination. See RSA 458-A:14; see also Snow v. Snow, 74 P.3d 1137, 1140-41 (Or. Ct. App. 2003). First, the modifying court must meet the requirements for initial child-custody jurisdiction under either RSA 458-A:12, I(a) or (b). RSA 458-A:14. Second, either "[t]he court of the other state [must] determine[] it no longer has exclusive, continuing jurisdiction under RSA 458-A:13 or that a court of this state would be a more convenient forum under RSA 458-A:18," RSA 458-A:14, I, or, alternatively, "[a] court of this state or a court of the other state [must] determine[] that the child, the child's parents, and any person acting as a parent do not presently reside in the other state," RSA 458-A:14, II. "In essence, the UCCJEA provides that unless all of the parties [listed in RSA 458-A:14, II] . . . no longer live in the state that made the initial determination sought to be modified, that state must first decide it does not have jurisdiction or decline jurisdiction." In re Custody of A.C., 200 P.3d 689, 691 (Wash. 2009) (en banc).

In this case, the petitioner sought to modify or terminate the respondents' guardianship over K.B., a minor, which had been granted by a Connecticut court. The Connecticut court's order granting the guardianship is a child-custody determination for UCCJEA purposes. See RSA 458-A:1, III (defining "[c]hild-custody determination"); see also In re Guardianship of S.T., 912 N.W.2d 262, 264, 266 (Neb. 2018) (applying UCCJEA to a proceeding for guardianship of a minor). Because the petition sought the modification of another state's child-custody determination, the circuit court had jurisdiction to entertain the petition only if the requirements of RSA 458-A:14 were satisfied. See RSA 458-A:14; Snow, 74 P.3d at 1139, 1141.

The requirements of RSA 458-A:14 were not satisfied. Even assuming that the circuit court had initial child-custody jurisdiction under RSA 458-A:12, I(a), which would satisfy the first requirement of RSA 458-A:14, the record does not demonstrate that a court of the State of Connecticut has "determine[d] it no longer has exclusive, continuing jurisdiction under [Connecticut's version of] RSA 458-A:13 or that a court of this state would be a more convenient forum under [Connecticut's version of] RSA 458-A:18." RSA 458-A:14, I; see Scott v. Somers, 903 A.2d 663, 665 n.1, 667 (Conn. App. Ct. 2006) (noting that Connecticut has adopted the UCCJEA); Unif. Child Custody Jurisdiction & Enforcement Act § 203, cmt., 9-IA U.L.A. 676.

Under RSA 458-A:14, I, "the original decree State is the sole determinant of whether jurisdiction continues." Unif. Child Custody Jurisdiction & Enforcement Act § 202, cmt., 9-IA U.L.A. 674; see also id. § 203, cmt., 9-IA

5

U.L.A. 676 (explaining that the UCCJEA provision regarding modification jurisdiction "complements" the provision regarding continuing, exclusive jurisdiction); <u>Yaman</u>, 167 N.H. at 88. Thus, "[a] party seeking to modify a custody determination must obtain an order from the original decree State stating that it no longer has jurisdiction." Unif. Child Custody Jurisdiction & Enforcement Act § 202, cmt., 9-IA U.L.A. 674; <u>accord</u> <u>Yaman</u>, 167 N.H. at 88. <u>But see</u> <u>Rainbow v. Ransom</u>, 990 A.2d 535, 536, 538 (Me. 2010) (concluding that Maine had jurisdiction to modify Hawaii child-custody determination where Hawaii court informed Maine court directly that it was declining jurisdiction); RSA 458-A:9 (providing for judicial communications between courts); Unif. Child Custody Jurisdiction & Enforcement Act § 110, cmt., 9-IA U.L.A. 667 (contemplating that judicial communications may cover jurisdiction in some circumstances).

Here, although the April 2010 order that originally granted the guardianship stated that New Hampshire "would be the proper jurisdiction for reinstatement of parental guardianship," the court subsequently vacated this order, and the final guardianship order does not contain any language about which state would be the appropriate jurisdiction for a future petition seeking to modify the guardianship. Accordingly, the record does not contain "an order from the original decree State stating that it no longer has jurisdiction." Unif. Child Custody Jurisdiction & Enforcement Act § 202, cmt. 1, 9-IA U.L.A. 674. We have previously cautioned, in applying the UCCJA, that courts of this state should not assume that another state has declined jurisdiction to modify an initial child-custody determination unless the out-of-state court has expressly done so. <u>See</u> <u>Clarke v. Clarke</u>, 126 N.H. 753, 755, 758 (1985); <u>see also</u> <u>In re J.W.S.</u>, 669 S.E.2d 850, 855-56 (N.C. Ct. App. 2008) (applying similar reasoning under UCCJEA); <u>cf</u>. <u>In re Marriage of Sareen</u>, 62 Cal. Rptr. 3d 687, 693 (Ct. App. 2007) (noting that "[c]ases interpreting the . . . UCCJA . . . may be persuasive in deciding cases under the UCCJEA, except where the two statutory schemes vary").[1]

Furthermore, the record does not demonstrate that "[a] court of this state or a court of the other state [has] determine[d] that the child, <u>the child's parents</u>, and any person acting as a parent do not presently reside in the other state." RSA 458-A:14, II (emphasis added). Although the circuit court effectively found that K.B., her biological mother, and the guardians "do not presently reside in" Connecticut, <u>id</u>., insofar as it found they all presently reside in Maine, the trial court also found that the residence of K.B.'s biological

---

[1] Even if the Connecticut court had not vacated its April 2010 order, we would not construe that order as a "determin[ation] [that Connecticut] no longer has exclusive, continuing jurisdiction under Section 202 [of the UCCJEA] or that a court of [New Hampshire] would be a more convenient forum under Section 207 [of the UCCJEA]." Unif. Child Custody Jurisdiction & Enforcement Act § 203, 9-IA U.L.A. 676; <u>accord</u> RSA 458-A:14; <u>see</u> Unif. Child Custody Jurisdiction & Enforcement Act § 202, 9-IA U.L.A. 155 (Supp. 2017); <u>id</u>. § 207, 9-IA U.L.A. 682-83.

father was "not known."  The only evidence in the record with respect to the father's location is that he was alleged by the petitioner to still reside in Connecticut.  Accordingly, the circuit court did not determine that all of the persons listed in RSA 458-A:14, II "presently reside" somewhere other than Connecticut.  Id.; see Melgar v. Campo, 161 P.3d 1269, 1273 (Ariz. Ct. App. 2007) (Arizona's version of RSA 458-A:14, II not satisfied where "there [was] no indication in the record that . . . Father has moved from" state that rendered initial child-custody determination); C.B. v. B.B., 998 So. 2d 489, 492 (Ala. Civ. App. 2008) (Alabama's version of RSA 458-A:14, II not satisfied where "[t]he parties d[id] not dispute that the father resides in" state that rendered initial child-custody determination).

In sum, the record does not demonstrate that the requirements of RSA 458-A:14, I or II were satisfied.  We thus conclude that the trial court did not have jurisdiction to entertain this petition to modify another state's child custody determination.  See G. B., 167 N.H. at 104 (concluding that New Hampshire retained continuing, exclusive jurisdiction over initial child custody determination because "[i]t has not been demonstrated that any of the determinations enumerated in subparagraphs (a) or (b) [in RSA 458-A:13, I,] have been made in this case").  Accordingly, we vacate the court's order and remand with instructions to dismiss the petition.  We conclude by addressing the parties' arguments as to the proper procedural disposition of this case.[2]

At oral argument, the respondents contended that we should construe the circuit court's order as having determined, at least implicitly, that the court lacked jurisdiction to modify the Connecticut guardianship.  To the extent the respondents argue that we should affirm any determination made by the circuit court that it lacked jurisdiction to modify the Connecticut guardianship because, pursuant to Connecticut law, the guardianship was permanent and therefore not subject to modification, we cannot do so.  This argument puts the cart before the horse; the court could determine the legal status of the guardianship only if it had subject matter jurisdiction.  See Cole, 171 N.H. at 408 ("A court lacks power to hear or determine a case concerning subject matter over which it has no jurisdiction.").  The UCCJEA, as it has been enacted by the New Hampshire Legislature, controls whether the circuit court had subject matter jurisdiction.  G. B., 167 N.H. at 102.  "The UCCJEA specifically seeks to avoid a judicial analysis of substantive issues in the determination of jurisdiction."  Welch-Doden v. Roberts, 42 P.3d 1166, 1173 (Ariz. Ct. App. 2002).  The legal status of the respondents' guardianship pursuant to Connecticut law is not a relevant consideration under RSA 458-A:14.

---

[2] In light of our order issued shortly before oral argument requesting that the parties be prepared to address subject matter jurisdiction under the UCCJEA, we exercise our discretion to consider certain contentions raised for the first time at oral argument.  See In the Matter of Gendron & Plaistek, 157 N.H. 314, 319 (2008); State v. Tucker, 145 N.H. 723, 726 (2001).

7

To the extent the respondents argue that we should construe the circuit court's order as having implicitly conducted the jurisdictional analysis required by the UCCJEA, the respondents fare no better. Even assuming the court's order can be reasonably construed in this manner, the court erred in concluding that it had subject matter jurisdiction under the UCCJEA for the reasons explained above. While we are sympathetic to the respondents' position, we cannot waive subject matter jurisdiction, Cole, 171 N.H. at 408, no matter how much we may "regret the delay that these proceedings . . . have had on [K.B.]'s custody determination," A.C., 200 P.3d at 693.

By contrast, the petitioner argues that we should remand this case to the circuit court without vacating its order, and instruct the court to communicate with Connecticut regarding the disposition of the 2010 guardianship proceeding. We decline to do so because, as explained above, the legal status of the 2010 guardianship under Connecticut law is not relevant to whether the circuit court had jurisdiction. To the extent the petitioner argues that we should remand this case with instructions to the circuit court to communicate with Connecticut regarding whether the Connecticut court intends to retain jurisdiction over its 2010 child-custody determination, see RSA 458-A:9; Unif. Child Custody Jurisdiction & Enforcement Act § 110, cmt., 9-IA U.L.A. 667, we decline to do so given the petitioner's acknowledgment at oral argument that nothing prevents her from seeking an order from the Connecticut court declining jurisdiction.

Vacated and remanded with instructions to dismiss.

HICKS and DONOVAN, JJ., concurred.

8