**IN RE G.B.R.**

[220 N.C. App. 309 (2012)]

matter of law. The issue of actual malice and damages is left for jury determination.

Affirmed in part; reversed and remanded in part.

Judges THIGPEN and McCULLOUGH concur.

———

IN THE MATTER OF: G.B.R. AND S.D.R.

No. COA11-1354

(Filed 1 May 2012

**1. Termination of Parental Rights— termination petition— motion to amend—improperly granted—no prejudice**

The trial court erred in allowing DSS to amend motions to terminate respondent father's parental rights to conform to the evidence presented at the termination hearing as there is no right to amend a termination petition to conform to the evidence at a hearing under N.C.G.S. § 1A-1, Rule 15(b). However, respondent was not prejudiced by the amendment to the motions as the trial court did not rely upon the amendment in terminating his parental rights and DSS's motion to terminate parental rights gave respondent notice that DSS was seeking to terminate his parental rights based on neglect stemming from his incarceration.

**2. Termination of Parental Rights—findings of fact not supporting conclusion of neglect as ground for termination— evidence of changed circumstances not considered**

The trial court erred by terminating respondent father's parental rights based on neglect because the trial court's findings were not supported by clear, cogent, and convincing evidence of neglect at the time of the hearing and, in turn, those facts did not support the trial court's conclusion that respondent neglected his children within the meaning of N.C.G.S. § 7B–101(15). The trial court failed to consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect.

Appeal by respondent from orders entered 15 August 2011 by Judge Alexander Lyerly in District Court, Mitchell County. Heard in the Court of Appeals 9 April 2012.

*Eggers, Eggers, Eggers & Eggers, PLLC, by Kimberly M. Eggers; and Harrison & Poore, PA, by Hal Harrison, for petitioner-appellee Mitchell County Department of Social Services.*

*Pamela Newell for guardian ad litem.*

*Michael E. Casterline for respondent-appellant father.*

STROUD, Judge.

Respondent-father appeals from the trial court's orders terminating his parental rights to the minor children on the ground of neglect. For the following reasons, we reverse in part the orders of the trial court.

## I. Facts and background

The Mitchell County Department of Social Services ("DSS") filed juvenile petitions on 12 August 2009 alleging the minor children George and Sam[1] to be neglected in that they did not receive proper care, supervision, or discipline, and they lived in an environment injurious to their welfare, and dependent in that they were in need of placement. At the time the petitions were filed, respondent-father was incarcerated; the children were living with their mother.[2] DSS was granted non-secure custody of the children, and the children were placed in foster care.

The children were adjudicated neglected based solely upon the mother's acts or omissions, by orders entered 20 November 2009; the order specifically noted that "there was no evidence as to any neglectful conduct relative to the respondent father" and he "had no part to play in any of the conduct leading to the filing of the Petition herein." By disposition orders entered on the same day, the trial court authorized continued custody with DSS and ordered the children's mother to complete a substance abuse treatment program as well as satisfy all requirements set forth in her case plan with DSS. The disposition orders made no mention of respondent-father. At a permanency planning review hearing held on 3 May 2010, the trial court

---

1. We will refer to the minor children G.B.R. and S.D.R. by the pseudonyms George and Sam to protect the children's identity and for ease of reading.

2. The minor children's mother is not a party to this appeal.

relieved DSS of all responsibility for reunification efforts "with either respondent parent" and authorized a permanent plan of adoption.

On 7 July 2010, DSS filed motions to terminate both parents' rights to the minor children, and alleged the ground of neglect pursuant to N.C. Gen. Stat. § 7B-1111(a)(1). On 26 October 2010, respondent-father filed a response denying the material allegations of the DSS motions and seeking to have the motions dismissed pursuant to Rule 12(b)(6) of the Rules of Civil Procedure for failure to allege sufficient facts upon which relief may be granted.

By the time the termination hearing was held on 12 July 2011, respondent-father had been released early from prison and was employed. DSS presented evidence that in 2006 the children had been adjudicated neglected in Avery County as a result of respondent-father's actions and, after all of DSS's evidence had been presented, DSS moved under N.C. Gen. Stat. § 1A-1, Rule 15(b) to amend the motions to terminate to conform with the evidence by including the additional allegation that respondent-father "was the parent involved in the petitions in Avery County where an adjudication of neglect was made based upon his conduct." Over objection, the trial court allowed the motion to amend the termination motions. The trial court denied motions to dismiss made by respondent-father. The trial court made no ruling during the hearing but by written orders entered 15 August 2011, held that respondent-father neglected the minor children and that termination of respondent-father's parental rights was in the best interests of the minor children and thus ordered that his rights be terminated. Respondent-father appeals, arguing that (1) the trial court erred in allowing DSS to amend the motions to terminate his parental rights to conform to the evidence at the termination hearing; (2) the trial court erred in terminating his parental rights without making sufficient findings of fact to support a conclusion of neglect; and (3) the order of termination improperly lists conclusions of law as findings of fact and fails to state a statutory basis for termination.

## II. Amendment to motions to terminate parental rights

[1] Respondent-father first contends the trial court erred in allowing DSS to amend the motions to terminate his parental rights to conform to the evidence presented at the termination hearing. "A motion to amend is addressed to the discretion of the court, and its decision thereon is not subject to review except in case of manifest abuse." *Calloway v. Ford Motor Co.*, 281 N.C. 496, 501, 189 S.E.2d 484, 488 (1972) (citations omitted). But in this situation, respondent-father

contends that the amendment to conform to the pleadings under N.C. Gen. Stat. § 1A-1, Rule 15(b) is not allowed as a matter of law pursuant to *In re B.L.H.*, 190 N.C. App. 142, 660 S.E.2d 255, *aff'd per curiam*, 362 N.C. 674, 669 S.E.2d 320 (2008). For questions of law, we apply *de novo* review. *In re D.S.*, 364 N.C. 184, 187, 694 S.E.2d 758, 760 (2010). Specifically, respondent-father, citing *In re B.L.H.*, argues that the trial court erred in allowing the amendment because he was not properly put on notice that the adjudication of neglect from Avery County in 2006 would be added to the claims raised by the petition and used against him in the termination proceedings, as "[t]here were no facts concerning this prior case alleged in the petition[.]". Respondent-father concludes that because of the lack of notice he was "unable to effectively prepare a defense against those allegations" and the orders terminating his parental rights should be reversed.

In *In re B.L.H.*, 190 N.C. App. 142, 660 S.E.2d 255, we addressed the issue of an amendment to a petition to terminate the parental rights of the respondent-mother. In that case, on 30 January 2007 and 5 February 2007 DSS filed petitions to terminate the parental rights of the respondent-mother, alleging that (1) the minor children were neglected and there was a high risk of repetition of neglect, pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) and that (2) the minor children had been in DSS custody for more than six continuous months and the respondent-mother had willfully failed to pay a portion of their care, pursuant to N.C. Gen. Stat. § 7B-1111(a)(3). *Id.* at 144, 660 S.E.2d at 256. At the hearing on these petitions, a social worker testified regarding the custody and placement of the minor children from 2005 to 2006 and DSS moved to amend the termination petitions to conform to the evidence to include an additional ground not raised in the original petition, specifically under N.C. Gen. Stat. § 7B-1111(a)(2), that the minor children had been left in foster care for a period of 12 months preceding the filing of the petition. *Id.* Over the respondent-mother's objection that "she received no notice of the allegation and that such an amendment was a substantial change to the petitions requiring additional time to prepare a defense[,]" the trial court allowed the amendment and subsequently entered orders terminating the respondent-mother's parental rights based only on the amended allegations pursuant to N.C. Gen. Stat. § 7B-1111(a)(2). *Id.* The respondent-mother appealed, arguing that the trial court erred in amending the petitions; DSS countered that the amendment was allowed pursuant to N.C. Gen. Stat. § 1A-1, Rule 15(b). *Id.* This Court, after noting that "[t]he Rules of Civil Procedure will . . . apply to fill procedural gaps where Chapter 7B requires, but does not identify, a

specific procedure to be used in termination, cases" stated that Chapter 7B, Article 11 of our General Statutes, which addresses the termination of parental rights, "is entirely silent on the amendment of petitions or motions in termination proceedings[.]" *Id.* at 146, 660 S.E.2d at 257. This Court further stated that

> [t]he only right of amendment permitted in Chapter 7B proceedings is for the amendment of a petition in juvenile, abuse, neglect or dependency proceedings, and this right is limited to "when the amendment does not change the nature of the conditions upon which the petition is based." N.C. Gen. Stat. § 7B-800 (2007).

*Id.* This Court went on to hold that

> [a]ccordingly, we will not superimpose a right to amend a petition or motion for termination of parental rights to conform with the evidence presented at the adjudication hearing and the trial court erred by allowing the amendment. *See Peirce*, 53 N.C. App. at 380, 281 S.E.2d at 203(holding "the legislative intent was that G.S., Chap. 7A, Art. 24B, [now Article 11 of Chapter 7B] exclusively control the procedure to be followed in the termination of parental rights.").

*Id.* at 146-47, 660 S.E.2d at 257. Thus, *B.L.H.* seems to establish that Chapter 7B, Article 11 entirely eliminates the use of a motion to amend a petition or motion for termination of parental rights to conform to the evidence presented at the hearing under N.C. Gen. Stat. § 1A-1, Rule 15(b).

The *B.L.H.* Court then addressed whether there was sufficient notice to the respondent-mother in the *original* petition, and noted that

> [a] petition for termination of parental rights must allege "[f]acts that are sufficient to warrant a determination that one or more of the grounds for terminating parental rights [listed in N.C.G.S. § 7B-1111] exist." N.C. Gen. Stat. § 7B-1104(6) (2007). "While there is no requirement that the factual allegations [in a petition for termination of parental rights] be exhaustive or extensive, they must put a party on notice as to what acts, omissions, or conditions are at issue." *In re Hardesty*, 150 N.C. App. 380, 384, 563 S.E.2d 79, 82 (2002). Where the factual allegations in a petition to terminate parental rights do not refer to a specific statutory ground for termination, the trial court may

find any ground for termination under N.C.G.S. § 7B-1111 as long as the factual allegations in the petition give the respondent sufficient notice of the ground. *In re A.H.*, 183 N.C. App. 609, 644 S.E.2d 635 (2007); *In re Humphrey*, 156 N.C. App. 533, 577 S.E.2d 421 (2003). However, where a respondent lacks notice of a possible ground for termination, it is error for the trial court to conclude such a ground exists. *In re C.W. & J.W.*, 182 N.C. App. 214, 228-29, 641 S.E.2d 725, 735 (2007); *Hardesty*, 150 N.C. App. at 384, 563 S.E.2d at 82.

*Id.* at 147, 660 S.E.2d at 257-58. In reversing the trial court's orders, this Court further held that the petitions as originally filed by DSS, without the amendments, were not sufficient to give the respondent-mother notice that N.C. Gen. Stat. § 7B-1111(a)(2) was a possible ground for terminating her parental rights and that the trial court erred in finding grounds existed to terminate respondent-mother's parental rights to the minor children pursuant to N.C. Gen. Stat. § 7B-1111(a)(2). *Id.* at 148, 660 S.E.2d at 258.

Thus, based on this Court's ruling in *B.L.H.* that there is no right to amend a termination petition to conform to the evidence at hearing under N.C. Gen. Stat. § 1A-1, Rule 15(b), *see id.* at 146-47, 660 S.E.2d at 257, we must hold that as a matter of law that the trial court erred in allowing DSS to amend the petitions to terminate the parental rights of respondent-father. But this does not end our analysis, as we still must determine if the original motions to terminate respondent-father's parental rights gave sufficient notice that DSS was seeking termination based on neglect, pursuant to N.C. Gen. Stat. § 7B-1111(a)(1).

The motions to terminate parental rights as filed by DSS on 7 July 2010 alleged the following regarding respondent-father:

4. Mitchell County Department of Social Services was awarded custody of the above-named juvenile pursuant to the aforementioned Orders. That the facts sufficient to warrant the termination of parental rights of the above-named respondent *parents* are as follows:

a. That the respondent mother has neglected the juvenile and has continued to neglect the juvenile as defined by N.C.G.S. § 7B-101(a)(1) and there is a likelihood of future neglect if the juvenile is returned to the *parents*, to wit:

. . . .

(7)  At all relevant times herein, respondent father has been incarcerated with the North Carolina Department of Corrections and has not been available as a resource to provide for the juvenile. Respondent father is serving a sentence for being a habitual felon. He currently has approximately 3 years remaining with that sentence.

(Emphasis added.) First we note that even though the mother is specifically referenced in the allegations of neglect, the motions also allege the respondent-father's incarceration and lack of availability to care for the children. The motions also allege that DSS is seeking termination of the "parents[']" parental rights and there was "a likelihood of future neglect if the juvenile is returned to the parents[.]"(emphasis added). Certainly, the respondent-father's incarceration could be a factor in determining whether to terminate respondent-father's parental rights based on neglect. *See In re C.W.*, 182 N.C. App. 214, 220, 641 S.E.2d 725, 730 (2007) (noting in a termination of parental rights case, "[a] parent's incarceration may be relevant to whether his child is neglected; however, [i]ncarceration, standing alone, is neither a sword nor a shield in a termination of parental rights decision." (citations and quotation marks omitted)). Thus, the motions gave respondent-father notice of the possibility of the termination of his parental rights for neglect under N.C. Gen. Stat. § 7B-1111(a)(1), although the factual circumstances alleged in the original motion were limited to his incarceration, which was expected to continue for three more years.

Even if we assume arguendo that it would also be necessary for the motion for termination to allege the specific factual circumstances of the 2006 adjudication of neglect based upon respondent-father's conduct, in this case it would not change the result, as the trial court did not rely upon any factual circumstances related to respondent-father except his incarceration. It appears that the trial court did not base its determination of neglect upon the 2006 adjudication in Avery County as the trial court made no mention of it at the conclusion of the hearing in open court and there is no finding of fact that references this specific allegation. Thus, the fact that the trial court erroneously allowed the amendment to the motions appears to have had no effect upon its ultimate determination of neglect. This case differs from *B.L.H.*, as in *B.L.H*, there was no notice to. the respondent-mother of the possibility of termination based on N.C.

Gen. Stat. § 7B-1111(a)(2), which was the only ground that the trial court found in terminating her parent rights, because DSS's original petitions had only alleged grounds supporting termination of parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) and N.C. Gen. Stat. § 7B-1111(a)(3). *See id.* Accordingly, DSS's motion to terminate parental rights gave respondent-father notice that DSS was seeking to terminate his parental rights based on neglect stemming from his incarceration, pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), but because the trial court did not rely upon the amendment, respondent-father was not prejudiced by the amendment to the motions.

### III.  Neglect

**[2]**  Respondent-father next contends that the trial court erred in terminating his parental rights based on neglect because the findings of fact do not support the trial court's conclusions of law. We have stated that "[t]he standard for review in termination of parental rights cases is whether the findings of fact are supported by clear, cogent and convincing evidence and whether these findings, in turn, support the conclusions of law." *In re Clark*, 72 N.C. App. 118, 124, 323 S.E.2d 754, 758 (1984).

A child is neglected if he or she

> does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.

N.C. Gen. Stat. § 7B-101(15) (2009). In determining neglect, the court must consider "the fitness of the parent to care for the child *at the time of the termination proceeding.*" *In re Ballard*, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984) (emphasis in original). Although evidence of past neglect is admissible, "[t]he trial court must also consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect." *Id.* (citation omitted). This is especially true where the parent has not had custody of the child for quite some time. *Id.* at 714, 319 S.E.2d at 231.

As to respondent-father, the trial court in its orders found:

> (7)  At all relevant times herein, Respondent Father has been incarcerated with the North Carolina Department of Corrections and has not been available as a resource to provide for the

Juvenile[s]. Respondent Father is serving a sentence for being a habitual felon. At the time of the Hearing in this Matter, Respondent Father had been released early from the sentences imposed herein. Furthermore, Respondent Father has neglected [the] Juvenile[s] and has continued to neglect the Juvenile[s] as defined by N. C. G. S. § 7B-101(a)(1) and there is a likelihood of future neglect if the Juvenile[s] [are] returned to him.

. . . .

8. Respondent[-father] has not been a part of the life of the juvenile[s] since 9 December 2006 when he was first arrested for the charges leading to his latest incarceration. This has resulted in him being in prison for over 4 years of the [juveniles' lives]. Previously, Respondent[-father] was in prison during the earlier years of the [juveniles' lives]. Because of the foregoing, the Court finds that there currently exists little or no bond between the juvenile[s] and respondent father[.]

The trial court concluded that the minor children were neglected and "[t]here remains a likelihood of future neglect if the [juveniles are] returned to either of the Respondent Parents" and that it was in the best interest of the juveniles that the parental rights of both parents be terminated.

The trial court's findings focus on respondent-father's past incarceration and mention that he had been released from prison. But there are no specific findings as to current conditions of neglect after respondent-father's release, any changes in circumstances following his release, or how his current conditions or behavior show a probability of repetition of neglect. See Ballard, 311 N.C. at 715, 319 S.E.2d at 232. In fact, our review of the transcript and evidence indicates that DSS presented no evidence as to the respondent-father's circumstances since his release from incarceration and no evidence which would indicate a likelihood of repetition of neglect by respondent-father. DSS's evidence at the hearing focused almost entirely on the mother and on the children's progress and bond with their foster family. As to respondent-father, DSS's evidence was that he had been incarcerated as a habitual felon and that he had attempted to stay in contact with the children by writing while in prison, although only the first letters, in October of 2009, were given to the children. DSS stopped delivering written correspondence from respondent-father to the children because someone, either a social worker or therapist,

IN RE G.B.R.

[220 N.C. App. 309 (2012)]

determined that the letters were too upsetting to the children based upon their reaction to the letters, and not based on "anything [respondent-father] said" in the letters. Respondent-father's evidence tended to show that he sent approximately 10 to 20 letters or cards to the children while he was incarcerated. His evidence also tended to show that he had full-time employment since January 2011, as he had begun working on work release prior to his parole in May 2011; he had family medical insurance available through his employer; he had his own furnished apartment which was near both his workplace and schools for the children; he did not drink any alcoholic beverages and was not on any medication, prescribed or not; and he had no relationship with the mother because of the way she had treated the children during his incarceration. Respondent-father also presented evidence that while incarcerated, he completed an anger management course; a character education course; a human resource development program; and a "father accountability" class which lasted for about 16 weeks, meeting twice a week. He also testified regarding the 2006 adjudication of neglect, which occurred when he was arrested for driving while impaired with the children in the car, and the mother was not immediately available to care for the children; the children were returned to the parents 9 days later.

The factual situation presented here is quite similar to that at issue in *In re Shermer*, 156 N.C. App. 281, 576 S.E.2d 403 (2003) in which this Court reversed the trial court's termination of the previously-incarcerated father's parental rights based upon neglect. Actually, respondent-father herein appears to have made more progress than the father in *Shermer*, who was still attending classes and seeking employment at the time of the termination hearing. *Id.* at 283, 576 S.E.2d at 405. In *Shermer*, this Court stated that

> [h]ere, we see no clear, cogent, and convincing evidence and no finding that respondent has neglected his children or that any past neglect was likely to reoccur. The trial court took judicial notice of past orders in which it had found that both children were neglected. However, as respondent points out in his brief, conditions have changed since then. When the previous orders were entered, the children lived with Sherry Shermer, respondent's ex-wife, and respondent was in prison. The orders concerned one incident where Ms. Shermer allegedly fired a gun around the children and another where Ms. Shermer brought Buddy along on an attempt to help respondent escape from prison. Although these orders are rel-

evant evidence in the termination proceeding, the trial court also was required to consider how conditions have changed since the time the orders were entered. *In re Tyson*, 76 N.C. App. 411, 416–17, 333 S.E.2d 554, 557–58 (1985).

*Id.* at 287, 576 S.E.2d at 407.

Just as in *Shermer*, the trial court here failed to "consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect." *See Ballard*, 311 N.C. at 715, 319 S.E.2d at 232. Thus, as in *Shermer*,

> we conclude that the trial court's findings are not supported by clear, cogent, and convincing evidence of neglect at the time of the hearing and, in turn, that those facts do not support the trial court's conclusion that respondent neglected [George and Sam] within the meaning of N.C. Gen. Stat. § 7B–101(15).

156 N.C. App. at 288, 576 S.E.2d at 408. We therefore reverse the portion of the trial court's order terminating respondent-father's parental rights. Because we reverse, we need not address respondent-father's remaining arguments.

REVERSED.

Judges HUNTER, Robert C. and ERVIN concur.