McGEE, Chief Judge.
*426 Respondent-Mother ("Respondent") appeals from the trial court's order terminating her parental rights to her minor children A.G.M. and A.L.M. ("the children"). With respect to the termination of Respondent's parental rights, we reverse and remand for further proceedings. In all other respects, we affirm.
The Guilford County Department of Health and Human Services ("DSS") purportedly obtained nonsecure custody of the children on 15 January 2011, after receiving a report that Respondent had been arrested, was using crack cocaine, and did not have an alternative *427 childcare arrangement. Thereafter, the children were purportedly adjudicated neglected and dependent juveniles, and placed in foster care. After a series of review *126 hearings, the trial court changed the children's permanent plan to adoption on 29 March 2012. Since the children were first taken into DSS's physical custody, Respondent spent the following periods of time incarcerated: 19 January 2011 to 24 April 2011, and 20 June 2011 to 25 January 2013. While incarcerated, Respondent participated in classes relating to substance abuse, anger management, domestic violence, preventing recidivism, and parent-child nurturing. Respondent also "pretty frequent[ly]" sent cards, letters, drawings and presents to the children while she was incarcerated. Sometime subsequent to Respondent's release from prison, she ceased sending things to the children after she was told the items were not being shown to the children, but were being kept in "life books" for the children in case it should be decided at some future date that the children could have those correspondences and items.
DSS filed petitions to terminate Respondent's parental rights. However, on 28 September 2012, Respondent's attorney filed a motion to dismiss the petitions for lack of subject matter jurisdiction because the children had previously been the subject of juvenile proceedings in Kentucky, and there was no evidence that Kentucky had terminated its jurisdiction as required by the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). DSS and the trial court apparently believed the proceedings in Kentucky had been closed by an order entered 22 September 2009. However, because Kentucky had not relinquished jurisdiction in those juvenile proceedings, the trial court in North Carolina lacked jurisdiction to address the matters before it. On 31 January 2013, DSS simultaneously dismissed the proceeding purportedly initiated in January 2011, and filed requests for nonsecure custody of the children based on the trial court's authority to exercise temporary emergency jurisdiction pursuant to N.C. Gen.Stat. § 50A-204. The trial court heard DSS's request on 31 January 2013, and entered an order on 25 February 2013 granting DSS temporary nonsecure custody of the children pursuant to its emergency temporary jurisdiction.
DSS filed new petitions on 28 March 2013, alleging that the children were neglected and dependent juveniles. The petitions alleged that the children had been in DSS custody since Respondent's arrest on 15 January 2011, both of the children's parents had histories of substance abuse, and both the children's presumptive father and Respondent's then current husband had committed acts of domestic violence against Respondent. It was further alleged in the petition that Respondent had *428 been incarcerated from 19 January 2011 to 15 March 2011, and from 20 June 2011 until the date of the petition,[1] WHICH LIMITED Her ability to meet the requirements deemed necessary for reunification by DSS; that she had failed to maintain contact with DSS or comply with the requirements of her DSS service agreement; and that she had a substantial history with social services in Kentucky.
The trial court in Kentucky entered valid orders transferring jurisdiction to North Carolina on 4 October 2013, though those orders were not filed in Guilford County until some later date. The trial court entered its first valid order adjudicating the children neglected and dependent juveniles on 10 December 2013, following a 7 November 2013 hearing on DSS's 28 March 2013 petitions for nonsecure custody.
The trial court ruled that the children were neglected, as defined by N.C. Gen.Stat. § 7B-101(15), because they "do not receive proper care, supervision or discipline from [their] parents;" that the children "have been abandoned by their parents;" and that they had "lived in an environment injurious to [their] welfare while in the home of their mother." The trial court ruled that the children were dependent, as defined by N.C. Gen.Stat. § 7B-101(9), "in that [they] are in need of assistance or placement because [their] parents are unable to provide for their care or supervision and lack an appropriate alternative child care arrangement." The *127 trial court further ruled: "Since the filing of the Juvenile Petition[s], [DSS] has made reasonable efforts to achieve permanence for the juveniles and to eliminate placement." The trial court denied Respondent visitation because "it has been years since the juveniles have seen [Respondent]." The trial court then ordered:
5. If [Respondent] desires visitation then she must make contact with the juvenile[s'] therapist ... and DSS to determine if and when any visitation would be considered or appropriate given that the juveniles have not had any contact with the mother in a very long time.
6. [Respondent] is to engage in therapy with a therapist that has been pre-approved by [DSS]. The mother is to submit the therapist names and contact information to DSS for approval.
*429 ....
8. [DSS] has made and shall continue to make reasonable efforts to achieve permanence for the [children].
....
10. This matter is to return to [c]ourt for a Dispositional/Permanency Planning Hearing on December 5, 2013.
Ordered this 7th day of November, 2013; signed this the 9 day of December, 2013.
The trial court entered this adjudication order on 10 December 2013. By this adjudication order, the children were finally placed in the temporary custody of DSS pursuant to an adjudication of neglect and dependency entered by a North Carolina court with jurisdiction.
The trial court conducted a "Disposition and Permanency Planning Review Hearing" on 5 December 2013, less than one month following the 7 November 2013 adjudication hearing, and five days before entry and service of the adjudication order. Respondent was not present at that hearing. The trial court entered an order from the disposition and permanency planning hearing on 4 February 2014, nearly two months after having conducted the hearing. In its 4 February 2014 order from the 5 December 2013 disposition and permanency planning hearing, the trial court stated that, relevant to Respondent, "[t]he conditions that led to the juveniles' coming into custody" were:
• [Respondent's] criminal history and incarceration
• [Respondent's] substance abuse
• Domestic violence between [Respondent] and her husband [the children's stepfather]
• History of domestic violence between [Respondent] and [the presumptive father]
• Prior CPS history in Kentucky
The trial court found that: "After [Respondent's] release from prison [on 25 January 2013], [DSS] sent [Respondent] a second full service agreement in July 2013 (the first full service agreement having been signed in June 2011). DSS sent [Respondent] a full service agreement again in October 2013[.]" The trial court then listed the components of the service agreements sent to Respondent by DSS, which included obtaining a mental health evaluation and following up as needed, *430 domestic violence counseling, showing an ability to provide the children with a safe environment, maintaining safe and stable housing, parenting classes, individual counseling related to inappropriate sexual conduct in the presence of the children, stable employment, payment of fines and child support, developing a household budget, submitting to a drug and alcohol assessment and complying with recommendations, and submitting to random drug screens. The trial court found that Respondent had failed to comply with many of the provisions in the service agreement. The trial court also found: "It is most appropriate for termination of parental rights to be considered at this hearing as a result of the children having been in the custody of DSS for 31 months and the lack of permanence in their lives."
The trial court ruled that "[s]ince the filing of the Juvenile Petition[s], [DSS] has made reasonable efforts to achieve permanence for the juveniles and to eliminate the need for placement." The trial court changed the "permanent plan to ... adoption with a concurrent plan of reunification with [Respondent]." The trial court ordered that DSS was "to continue to make reasonable efforts *128 to reunify the juveniles with [Respondent,]" but that DSS was "to proceed with seeking termination of parental rights within sixty days of this hearing." The trial court ordered that, if Respondent desired reunification, she "shall sign and return the service agreement directly to [DSS] and engage in the service components of that service agreement[,]" and that if Respondent desired visitation she "must make contact with the juveniles' therapist ... to schedule a session with [her] to explore if and when any visitation should be considered appropriate." Although the hearing was conducted on 5 December 2013, the order was not signed by the trial court until 3 February 2014, and was not entered until 4 February 2014. The certificate of service indicates that the disposition and permanency planning order was served on Respondent by depositing it with the United States Postal Service on 5 February 2014.
On 7 February 2014, two days after Respondent was served with the disposition and permanency planning order by mail, DSS filed a motion in the cause seeking termination of Respondent's parental rights. The motion alleged that Respondent's rights were subject to termination on the grounds of neglect, willfully leaving the children in placement outside the home for more than twelve months without making reasonable progress, willfully failing to pay a reasonable portion of the children's care for six months, dependency, and abandonment. The trial court conducted a hearing on the motion seeking termination on 12 and 13 May 2014.
*431 On 4 September 2014, more than three and a half months after the hearing, the trial court entered an order terminating Respondent's parental rights on the grounds of neglect, willfully leaving the children in foster care for more than twelve months, dependency, and abandonment. The trial court further concluded that termination would be in the children's best interests. Respondent timely appealed from the trial court's order terminating her parental rights.[2]
Analysis
Respondent argues that the trial court erred in terminating her parental rights. We agree.
The facts and procedural history of this case are unusual, and require us to dismiss certain evidence from our evaluation. "It is axiomatic that a trial court must have subject matter jurisdiction over a case to act in that case." In re S.D.A., R.G.A., V.P.M., & J.L.M., 170 N.C.App. 354, 355, 612 S.E.2d 362, 363 (2005) (citation omitted).
Although the North Carolina Juvenile Code grants the district courts of North Carolina "exclusive, original jurisdiction over any case involving a juvenile who is alleged to be abused, neglected, or dependent[,]" N.C. Gen.Stat. § 7B-200(a) (2007), the jurisdictional requirements of the UCCJEA and the Parental Kidnapping Prevention Act ... must also be satisfied for a court to have authority to adjudicate petitions filed pursuant to our juvenile code.
In re J.W.S., 194 N.C.App. 439, 446, 669 S.E.2d 850, 854 (2008) (citation omitted). It is undisputed in the present case that, pursuant to the requirements of the UCCJEA, the trial court had no jurisdiction to consider DSS's petition for nonsecure custody and to order that nonsecure custody of the children be granted to DSS on 15 January 2011. This is because the unresolved Kentucky custody order involving the children served to maintain exclusive jurisdiction in Kentucky. See N.C. Gen.Stat. § 50A-201 (2013) ; In re J.W.S., 194 N.C.App. at 446, 669 S.E.2d at 854-55.
It was the continuing duty of DSS to make reasonable efforts to insure that there were no proceedings in another state "that could affect the current proceeding." N.C. Gen.Stat. § 50A-209(d) (2013). Absent jurisdiction, the trial court did not have the authority to order DSS to assume nonsecure custody of the children. See *432 In re Ivey, 156 N.C.App. 398, 401, 576 S.E.2d 386, 389 (2003). Therefore, "DSS was not an agency awarded custody of the minor children by a *129 court of competent jurisdiction." in rE S.E.P. & L.U.E., 184 N.C.app. 481, 488, 646 S.E.2d 617, 622 (2007) ; see also In re S.W., 188 N.C.App. 165, 654 S.E.2d 831 (2008) (unpublished). When "the trial court never obtains subject matter jurisdiction over the case[,] all of its orders are void ab initio ." In re N.T., ---N.C.App. ----, ----, 769 S.E.2d 658, 660 (2015) (citations omitted).
What this means for the case before us is that DSS did not obtain legal custody of the children until the trial court entered its order granting DSS temporary emergency nonsecure custody pursuant to N.C. Gen.Stat. § 50A-204 on 25 February 2013. In addition, all orders of the trial court in this matter prior to the 25 February 2013 order were therefore void ab initio. Following entry of the emergency custody order, "the trial court was required to defer any further proceedings in the matter pending a response from [Kentucky] as to whether that state was willing to assume jurisdiction to resolve the issues [.]" In re J.W.S., 194 N.C.App. at 452, 669 S.E.2d at 858 (citations and quotation marks omitted); see also Matter of Van Kooten, 126 N.C.App. 764, 770-71, 487 S.E.2d 160, 164 (1997) (once trial court exercises emergency jurisdiction it must defer any further proceedings until the state with original continuing jurisdiction decides to maintain or relinquish jurisdiction).
Pursuant to the 25 February 2013 emergency custody order, the trial court was without jurisdiction: (1) to order Respondent to do anything other than relinquish the children to the temporary custody of DSS; (2) to order DSS to do anything beyond what was necessary for DSS to take care of the children pursuant to the emergency custody order; and (3) to consider any other matters related to custody of the children. Id.; see also N.C. Gen.Stat. § 7B-904 (2013) ; In re K.U.-S.G., D.L.L.G., & P.T.D.G., 208 N.C.App. 128, 131-32, 702 S.E.2d 103, 105-06 (2010).
The Present Action
DSS filed a new juvenile petition alleging the children were neglected and dependent on 28 March 2013. For over six months, the trial court lacked jurisdiction to consider this petition because Kentucky did not relinquish jurisdiction until 4 October 2013.
The first legitimate[3] adjudication order finding that the children were neglected and dependent was entered 10 December 2013. The trial court made the adjudicatory findings that the children
*433 have been in the physical custody of [DSS] since January 15, 2011, a period of more than two consecutive years immediately preceding the filing of the Juvenile Petition in this matter. During that period of time, DSS offered service agreements and services to [Respondent] in an effort to assist [Respondent] in reunifying with the [children]."
Respondent was incarcerated from 19 January 2011 to 24 April 2011, and from 20 June 2011 to 25 January 2013. The trial court found that Respondent had engaged in inappropriate acts prior to her 19 January 2011 incarceration, had left Virginia following her 25 January 2013 release "in violation of her bond agreement[,]" had returned to Kentucky following her release from prison though the children were in North Carolina, had failed "to contact DSS within forty-eight hours after being released from prison ... to advise DSS of her whereabouts[,]" and had failed "to maintain consistent contact with DSS up [to] the filing [of] the Juvenile Petition in this matter." The trial court also found that Respondent had not sought drug treatment after she was released from prison in January 2013, though she had told a social worker in March 2011 that she would seek drug treatment upon release from prison. We note that, though no petition or motion seeking termination of Respondent's parental rights had been filed, the trial court referred to the matter before it as "a termination of parental rights proceeding[.]"
While these findings were supported by the evidence, not all of them were relevant to *130 the adjudication. Though the children had been in the physical custody of DSS since January 2011, this custody was based upon void orders of the trial court. DSS did not have legal custody of the children until 2013. Neither DSS nor the trial court had authority to order Respondent to comply with any service agreements in order for Respondent to regain custody of the children, because Respondent had never legally lost custody of the children. For the same reasons, any failure to contact DSS, or respond in any way to DSS's requests prior to disposition-which of course occurred after the adjudication hearing-cannot be seen as violating any official order or agreement.
In the decretal portion of the adjudication order, the trial court stated that, if Respondent desired visitation with the children, Respondent was required to make contact with the children's therapist in order to determine when or if that would be appropriate, and that Respondent was "to engage in therapy with a therapist that has been pre-approved by [DSS]." It is unclear from the order what the required therapy was supposed to address. It is also unclear pursuant to what authority the trial court *434 ordered Respondent to engage in therapy. N.C. Gen.Stat. § 7B-904 states in relevant part:
At the dispositional hearing or a subsequent hearing the court may determine whether the best interests of the juvenile require that the parent ... undergo psychiatric, psychological, or other treatment or counseling directed toward remediating or remedying behaviors or conditions that led to or contributed to the juvenile's adjudication or to the court's decision to remove custody of the juvenile from the parent[.] If the court finds that the best interests of the juvenile require the parent ... [to] undergo treatment, it may order that individual to comply with a plan of treatment approved by the court or condition legal custody or physical placement of the juvenile with the parent ... upon that individual's compliance with the plan of treatment. The court may order the parent ... to pay the cost of treatment ordered pursuant to this subsection.
N.C. Gen.Stat. § 7B-904(c) (2013) (emphasis added).
In a 5 December 2013 "Disposition and Permanency Planning Review Hearing" conducted five days before entry of the 10 December 2013 adjudication order, the trial court for the first time set a permanent plan for the children. This was also the first permanency planning hearing in this matter.
Chapter 7B does not define "entry" of a termination of parental rights order, but does require that both adjudicatory and best interest orders in termination matters be "reduced to writing, signed, and entered no later than 30 days following the completion of the termination of parental rights hearing." The plain language of these statutes establishes that a TPR order must be in written form to be "entered." In addition, "[t]he Rules of Civil Procedure will ... apply to fill procedural gaps where Chapter 7B requires, but does not identify, a specific procedure to be used in termination cases." The Rules of Civil Procedure specifically provide that "a judgment is entered when it is reduced to writing, signed by the judge, and filed with the clerk of court." N.C.R. Civ. P. 58 (emphasis added).
Further, section (a)(1) of Rule 52 of the North Carolina Rules of Civil Procedure provides: " 'In all actions tried *435 upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment. ' Rule 52 applies to termination of parental rights orders."
In re B.S.O., V.S.O., R.S.O., A.S.O., & Y.S.O., 225 N.C.App. 541, 544, 740 S.E.2d 483, 485 (2013) (citations omitted). The requirement that an order be "reduced to writing, signed, and entered no later than 30 days following the completion of the hearing" applies equally for adjudication of the initial juvenile petition, N.C. Gen.Stat. § 7B-807(b), the disposition order, N.C. Gen.Stat. § 7B-905(a), orders following review and permanency planning hearings, N.C. Gen.Stat. § 7B-906.1(h), and any order continuing nonsecure custody, N.C. Gen.Stat. § 7B-506(d). It is only upon entry of these orders *131 that legal authority to act upon them is created. See In re Thompson, --- N.C.App. ----, ----, 754 S.E.2d 168, 171-72 (2014). Furthermore, in certain instances where the trial court fails to adhere to the mandate in the Juvenile Code that an order be reduced to writing, signed, and entered (i.e. filed) within thirty days, the code provides the following:
If the order is not entered within 30 days following completion of the hearing, the clerk of court for juvenile matters shall schedule a subsequent hearing at the first session of court scheduled for the hearing of juvenile matters following the 30-day period to determine and explain the reason for the delay and to obtain any needed clarification as to the contents of the order. The order shall be entered within 10 days of the subsequent hearing required by this subsection.
N.C. Gen.Stat. § 7B-807(b) (2013) ; see also N.C. Gen.Stat. § 7B-905(a) ; N.C. Gen.Stat. § 7B-906.1(h) ; N.C. Gen.Stat. § 7B-1109(e) ; N.C. Gen.Stat. § 7B-1110(a).
The disposition and permanency planning order resulting from the 5 December 2013 hearing was entered 4 February 2014. The permanent plan was "set as adoption with a concurrent plan of reunification with [Respondent]." In the same paragraph, the trial court stated that DSS was "to make reasonable efforts to reunify the juveniles with [Respondent]. [DSS] is to proceed with seeking termination of parental rights within sixty days of this hearing." We note that Respondent was served with this order approximately sixty days following the permanency planning hearing. In its 4 February 2013 order, the trial court for the first time *436 acknowledged "[t]he conditions that led to the juveniles' coming into custody [of DSS as including] the following:"
• [Respondent's] criminal history and incarceration
• [Respondent's] substance abuse
• Domestic violence between [Respondent] and her husband [the children's stepfather]
....
• History of domestic violence between [Respondent] and [the presumptive father]
• Prior CPS history in Kentucky
The trial court found that, after Respondent was released from prison, DSS sent Respondent a "full service agreement" in July 2013, and that DSS again sent Respondent a "full service agreement" in October 2013. The service agreement would have required Respondent to submit to various psychiatric and substance abuse evaluations, and engage in various treatment and therapy programs related to domestic violence, substance abuse, and parenting; obtain and maintain appropriate housing and employment; and submit to random drug testing "upon request by DSS." Respondent had not signed and returned the service agreement prior to the 5 December 2013 hearing. We note that neither the trial court nor DSS had the authority in this neglect and dependency proceeding to require Respondent to sign any service agreement or submit to any testing, evaluation, or therapy in relation to any custody determinations concerning the children prior to entry of the 4 February 2014 disposition and permanency planning order. N.C. Gen.Stat. § 7B-904 ; N.C. Gen.Stat. § 7B-406(b)(4) ; Thompson, --- N.C.App. at ----, 754 S.E.2d at 171-72.
The trial court found that Respondent "was placed under an order to pay child support in the amount of $50.00 per month effective February 1, 2013. However, [Respondent's] income is $2,220.00 per month and so the $50.00 per month order does not equate to the appropriate child support guideline amount." It is unclear under what authority Respondent was ordered to pay child support on 1 February 2013. It was at the 5 December 2013 disposition and permanency planning hearing that the trial court first obtained authority to order child support, N.C. Gen.Stat. § 7B-904(d), and only after entering the order on 4 February 2014, that any order of child support could go into effect. Thompson, --- N.C.App. at ----, 754 S.E.2d at 171-72.
*437 Prior to entry of the 25 February 2013 order granting DSS emergency custody of the children, the children were in the physical, *132 but not legal, custody of DSS. We are also unaware of any authority to order child support based upon emergency custody. In re Van Kooten, 126 N.C.App. at 769, 487 S.E.2d at 163 (citations omitted) ("The exercise of emergency jurisdiction, however, confers authority to enter temporary protective orders only[.]").
N.C. Gen.Stat. § 7B-906.1 states in part:
(d) At each [permanency planning] hearing, the court shall consider the following criteria and make written findings regarding those that are relevant:
(1) Services which have been offered to reunite the juvenile with either parent whether or not the juvenile resided with the parent at the time of removal or the guardian or custodian from whom the child was removed.
....
(e) At any permanency planning hearing where the juvenile is not placed with a parent, the court shall additionally consider the following criteria and make written findings regarding those that are relevant:
....
(5) Whether the county department of social services has since the initial permanency plan hearing made reasonable efforts to implement the permanent plan for the juvenile.
N.C. Gen.Stat. § 7B-906.1 (2013). In response to the requirement of N.C. Gen.Stat. § 7B-906.1(d)(1), the trial court included the following in its 4 February 2014 order:
a. [DSS] offered the following services to reunite the [children] with [Respondent] since removal:
• Three service agreements offered to [Respondent] since January 15, 2011
....
• Request to McLean County Kentucky Social for assistance in engaging [Respondent] in obtaining *438 domestic violence, counseling, substance abuse and other services
• Team Decision Making Meetings
• Permanency Planning Meetings
• Home visits with foster parents and children
....
• Contact with parent's attorneys
....
• Numerous attempts to contact both parents
"Removal" for purposes of our review occurred on 10 December 2013, after the trial court obtained jurisdiction and entered its adjudication order in response to the 28 March 2013 DSS petition. Nothing indicated above occurred after 10 December 2013 because the disposition and permanency planning hearing occurred on 5 December 2013. Based upon the above findings, the trial court concluded that DSS had "made reasonable efforts toward reunification and ha[d] made reasonable efforts towards permanence." With respect to N.C. Gen.Stat. § 7B-906.1(e)(5), the trial court acknowledged: "This is the initial permanency planning review hearing where a permanent plan for the juveniles is being selected. As set forth above, DSS has been making reasonable efforts toward reunification."
Three days following entry of the 4 February 2014 disposition and permanency planning order, DSS filed its 7 February 2014 motion seeking termination of Respondent's parental rights. Termination hearings were held 12 and 13 May 2014. The trial court entered its order terminating Respondent's parental rights on 4 September 2014, more than three and a half months after the hearings.
Grounds for Termination
The trial court terminated Respondent's parental rights based upon N.C. Gen.Stat. § 7B-1111(a)(1), (2), (6), and (7), which grounds are:
(1) The parent has ... neglected the juvenile. The juvenile shall be deemed to be ... neglected if the court finds the juvenile to be ... a neglected juvenile within the meaning of G.S. 7B-101.
(2) The parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months *439 without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal *133 of the juvenile. provided, however, that no parental rights shall be terminated for the sole reason that the parents are unable to care for the juvenile on account of their poverty.
....
(6) That the parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101, and that there is a reasonable probability that such incapability will continue for the foreseeable future. Incapability under this subdivision may be the result of substance abuse, mental retardation, mental illness, organic brain syndrome, or any other cause or condition that renders the parent unable or unavailable to parent the juvenile and the parent lacks an appropriate alternative child care arrangement.
(7) The parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion[.]
N.C. Gen.Stat. § 7B-1111(a) (2013).
At the adjudicatory stage of a termination of parental rights hearing, the burden is on the petitioner to prove by clear, cogent, and convincing evidence that at least one ground for termination exists. Review in the appellate courts is limited to determining whether clear, cogent, and convincing evidence was presented to support the findings of fact, and whether the findings of fact support the conclusions of law.
In re O.J.R., --- N.C.App. ----, ----, 769 S.E.2d 631, 634 (2015) (citations omitted).
Because, for purposes of this review, the children were not removed from Respondent more than twelve months prior to the termination hearing, N.C. Gen.Stat. § 7B-1111(a)(2) was not a valid ground for termination.
N.C. Gen.Stat. § 7B-1111(a)(6) is likewise improper. The trial court based this ground on Respondent's prior history of substance abuse.
*440 There is no evidence in the record that Respondent has abused any illegal substances since before her January 2011 incarceration; therefore, DSS failed in its burden of proving that substance abuse would prevent Respondent from providing for the proper care and supervision of the children. Id.
We also find insufficient evidence to support termination based upon neglect pursuant to N.C. Gen.Stat. § 7B-1111(a)(1). Neglect is defined as:
A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent ...; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law. In determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile lives in a home where another juvenile has died as a result of suspected abuse or neglect or lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home.
N.C. Gen.Stat. § 7B-101(15) (2013).
In determining neglect, the court must consider "the fitness of the parent to care for the child at the time of the termination proceeding. " Although evidence of past neglect is admissible, "[t]he trial court must also consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect." This is especially true where the parent has not had custody of the child for quite some time.
In re G.B.R., 220 N.C.App. 309, 316, 725 S.E.2d 387, 392 (2012) (citations omitted). The trial court based this ground primarily on events that occurred before 2011, including two relationships Respondent had with men who physically abused her; Respondent's failing to take proper precautions to prevent the children from seeing her engage in sexual acts with her then husband; Respondent's drug abuse and her criminal history. As stated above, there is no evidence of substance abuse since early 2011. We find that DSS presented insufficient evidence of a likelihood that Respondent would repeat her *134 prior history of entering into abusive relationships, or engaging in sexual acts in front of the children. *441 We recognize that, because Respondent had not been in close proximity to men for most of the period between January 2011 and the termination hearing, there was scant opportunity for DSS to make a determination concerning this issue. DSS also failed to demonstrate how Respondent's criminal history constituted neglect in this case. The trial court found:
[Respondent's] neglect of the [children] has been ongoing through the present as evidenced by the following: [Respondent's] failure to sign and return the full service agreement mailed to her after her release from prison; [Respondent's] failure to comply with the requirements of the service agreement developed for her; [Respondent's] refusal to answer the Social Worker's calls; [Respondent's] failure to maintain adequate contact with the Social Worker; [Respondent's] failure to participate in services targeted to address the issues that brought the [children] into custody; and [Respondent's] lack of stable housing. .... Given that [Respondent] has failed to address the issues that brought the juveniles into custody, and given that she continues to demonstrate deficits in her parenting judgment and abilities, there is a likelihood of the repetition of neglect by [Respondent].
As discussed above, neither the trial court nor DSS had the jurisdiction or the authority to compel Respondent to sign any service agreement, nor require that Respondent comply with anything in any service agreement, until entry of the disposition order on 4 February 2014. N.C. Gen.Stat. § 7B-904. We hold that in this instance the three months between the entry of the disposition order and the termination hearing was insufficient to determine whether Respondent was likely to repeat any prior neglect of the children. This is particularly true in light of the fact that Respondent was not allowed any contact with the children during that time period, Respondent has not failed any drug tests, Respondent has maintained employment and housing, and there is no evidence that Respondent has engaged in any inappropriate or dangerous relationships with men.
While we agree that Respondent's efficiency apartment at the time of the termination hearing would not be appropriate housing for the children if Respondent continued to share the apartment with a man, DSS has failed to demonstrate how Respondent's living conditions were inappropriate or harmful to the children while the children were living with their foster parents, without any contact with Respondent, and while *442 Respondent was without any legitimate expectation that she would obtain overnight visitation rights, much less custody of the children, in the immediately foreseeable future.
Finally, we hold there was not sufficient competent evidence to terminate Respondent's parental rights based upon a conclusion that Respondent "willfully abandoned the [children] for at least six consecutive months immediately preceding the filing of the petition or motion[.]" N.C. Gen.Stat. § 7B-1111(a)(7). The trial court found that Respondent "refused to cooperate with the Social Worker and did not make any significant effort toward achieving reunification." There was no legally recognizable plan for reunification in place until after the entry of the 4 February 2014 disposition order, and neither the trial court nor DSS could make any enforceable conditions on Respondent's behavior prior to 4 February 2014. DSS's motion for termination of Respondent's parental rights was filed on 7 February 2014. This three-day period is clearly inadequate to determine Respondent's compliance or lack of compliance with orders of the trial court or elements of any service agreement developed by DSS. It is also an insufficient amount of time in which to determine whether DSS's efforts toward reunification were reasonable, or whether DSS had made reasonable efforts to implement the permanent plan first set forth in the 4 February 2014 disposition and permanency planning order. Reasonable efforts means "[t]he diligent use of preventive or reunification services by a department of social services when a juvenile's remaining at home or returning home is consistent with achieving a safe, permanent home for the juvenile within a reasonable period of time." N.C. Gen.Stat. § 7B-101(18) (2013).
*135 We hold that DSS failed in its burden of proving that Respondent's conduct manifested "a willful determination to forego all parental duties and relinquish all parental claims to the child." In re Adoption of Searle, 82 N.C.App. 273, 275, 346 S.E.2d 511, 514 (1986) (citation omitted). Respondent's payment of child support, regular contact with the children's guardian ad litem, apparent sobriety, steady employment, and at least minimal participation in these proceedings were sufficient, in this instance, to defeat DSS's allegation that Respondent had willfully abandoned the children as required by N.C. Gen.Stat. § 7B-1111(a)(7).
Conclusion
Because we hold that DSS has failed in its burden of proving the existence of any ground for termination of Respondent's parental rights pursuant to N.C. Gen.Stat. § 7B-1111, we reverse the 4 September 2014 order to the extent that it terminated Respondent's parental rights to the *443 children. The portions of the 4 September 2014 order not pertaining to Respondent have not been challenged and are not affected by the holdings in this opinion. We remand to the trial court for it to exercise its continuing jurisdiction over this matter. DSS is, of course, free to file any appropriate petitions or motions in this matter as conditions warrant.
AFFIRMED IN PART, REVERSED AND REMANDED IN PART.
Judges STEPHENS and DAVIS concur.

This is incorrect as the petition was filed on 28 March 2013 and Respondent was released on 25 January 2013, prior to the filing of the petition. The exhibit attached to the petition, which included this information, was apparently drafted at least several months prior to the filing of the petition.

The trial court also terminated the parental rights of the children's presumptive father. However, the father failed to attend the termination hearing and did not appeal the court's termination order.

This assumes the 28 March 2013 petition, filed before the trial court had jurisdiction, was proper once the trial court obtained jurisdiction.